IN RE VOLUNTARY ASSIGNMENT OF TARNOWSKI: INTERNATIONAL SHOE COMPANY, Objecting creditor, Appellant.

*October 12—November 9, 1926.*

*Bankruptcy: Power of Congress and of the state to legislate relative to discharging debtors: State legislation superseded when Congress acts: Assignments for benefit of creditors: Not superseded by Bankruptcy Act: Constitutional law: Creditor participating in distribution opposing discharge: Appeal from order directing discharge.*

1. The insolvency laws of the state (secs. 128.01 to 128.29, Stats.) are completely superseded by the federal Bankruptcy Act as to all matters comprehended within that legislation. p. 282.

2. The power vested in Congress by sec. 8, art. I, of the United States constitution, relative to establishing uniform laws on the subject of bankruptcies, may or may not be exercised by Congress, as it sees fit, and until such power is exercised the states may legislate upon the subject.   p. 283.

3. Congress having indicated its intention to cover the entire field of bankruptcy legislation, the power of the state legislature upon the subject ceases.   p. 283.

4. During the existence of the federal Bankruptcy Act, state statutes afford the courts no power or authority to discharge debtors from their debts.   p. 283.

5. One may not enjoy the benefits and privileges of a statute and thereafter escape its burdens by attacking its validity. p. 284.

6. A voluntary assignment for the benefit of creditors is a personal right inherent in the ownership of property, and existed at common law independent of statute.   p. 285.

7. While the discharge of a bankrupt from his debts constitutes the very essence of a bankruptcy law and the distribution of the property of the bankrupt *pro rata* among his creditors a necessary incident, the discharge of a debtor is no part of an assignment law, and the provisions of the statutes relating to voluntary assignments do not contravene the federal Bankruptcy Act, and are still in force.   pp. 285, 286.

8. A creditor by accepting his *pro rata* share of the proceeds of a bankrupt estate voluntarily assigned for the benefit of creditors under the state insolvency laws did not waive his right to object to the debtor's discharge under sec. 128.25, Stats.   p. 286.

9. Under sec. 274.33, Stats., an order discharging a debtor after an assignment for the benefit of creditors under secs. 128.01 to 128.29 is a final order affecting a substantial right, and is plainly appealable, irrespective of the right to appeal under sec. 128.27.   p. 287.

10. While the law relating to the discharge of debtors is suspended in so far as it conflicts with the national Bankruptcy Act, when the circuit court assumes to act under such suspended law the practice provided therein may be invoked to secure a review of the orders and judgments of the court. p. 287.

11. The discharge is a mere ministerial act of the clerk of the court in obedience to an order of discharge, and such order, and not the discharge, is "a final order affecting a substantial right made in special proceedings," and is appealable. p. 288.

APPEAL from an order of the circuit court for Milwaukee county: JOHN J. GREGORY, Circuit Judge.   *Reversed.*

For the appellant there was a brief by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Albert K. Stebbins,* of counsel, all of Milwaukee, and oral argument by *Mr. Stebbins.*

For the respondent there was a brief by *William J. Morgan,* attorney, and *Morgan, La France & Rothman,* of counsel, all of Milwaukee, and oral argument by *William J. Morgan.*

On behalf of the State there was a brief by the *Attorney General* and *Franklin E. Bump,* assistant attorney general, and oral argument by *Mr: Bump.*

OWEN, J.   The question presented by this appeal is whether the courts of this state have power to discharge a bankrupt or insolvent debtor from his debts.   It appears that one *Stanley Tarnowski* executed and delivered his certain voluntary assignment, or deed of trust, under the provisions of ch. 128, Stats., to one Paul G. Ballentine, which said assignment was duly filed with the clerk of the circuit court for Milwaukee county, and thereafter the estate of said debtor was in all respects duly administered, in compliance with the provisions of said chapter.   The appellant, which was a creditor of said *Tarnowski,* duly filed its claim against said debtor, and accepted and received its *pro rata* dividend arising from the administration of the estate.   In due course the debtor made application for his discharge under the provisions of sec. 128.25, Stats.   The appellant filed objections to such discharge on the ground that the provisions of the Wisconsin statutes providing for the discharge of bankrupt debtors have been superseded by the national Bankruptcy Act, and that the circuit court for Milwaukee county had no power, jurisdiction, or authority to discharge said debtor from his debts.   From the order made by the court discharging the debtor, the appellant appeals.

Although the federal Bankruptcy Act has been in exist-
ence for more than a quarter of a century, our attention
has been called to no case in which the exact question here
presented has been decided.   It has been many times held
that the federal Bankruptcy Act operates to suspend state
insolvent laws, but in all such cases the question has been
raised *pendente* the insolvency proceedings in the state
courts and within the time under which a general assign-
ment for the benefit of creditors constituted an act of bank-
ruptcy under the provisions of the federal Bankruptcy Act.
*Mauran v. Crown C. L. Co.* 23 R. I. 324, 50 Atl. 331;
*R. H. Herron Co. v. Superior Court,* 136 Cal. 279, 68 Pac.
814; *E. C. Wescott Co. v. Berry,* 69 N. H. 505, 45 Atl.
352; *Parmenter Mfg. Co. v. Hamilton,* 172 Mass. 178,
51 N. E. 529; *Singer v. National Bedstead Mfg. Co.* 65
N. J. Eq. 290, 55 Atl. 868; *In re Smith,* 92 Fed. 135.   In
all of these cases it was said in effect, if not expressly, that
the federal Bankruptcy Law constitutes the supreme law of
the land upon the subject, so far as it is embraced within
the federal legislation, and that all state laws relating to
bankruptcy, so far as they touch the field covered by the
federal legislation, were superseded by the federal Bank-
ruptcy Act and are suspended during the period of its
existence.   The soundness of these declarations can scarcely
be questioned, and the fact that we have before us the ques-
tion raised after rather than prior to the attempted dis-
charge of the bankrupt cannot affect the status of the state
law.   That is either in force or it is not.   It cannot be
in force under one set of circumstances and not in force
under other conditions.   It cannot be the law that a state
court has power to discharge a bankrupt from his debts
when its proceedings in the administration of the estate
are not interfered with by federal courts, but that such
power is lost when a federal court takes over the administra-

tion of the estate. We think it clear enough that the insolvent laws of this state are completely superseded by the federal Bankruptcy Act as to all matters comprehended within that legislation.

By sec. 8, art. I, of the federal constitution it is provided that "The Congress shall have power . . . (4) to establish . . . uniform laws on the subject of bankruptcies throughout the United States." This is a power which Congress may or may not exercise, as it sees fit, and until such power is exercised, under well settled principles the states may legislate upon the subject. When, however, Congress has legislated and by its legislation indicated its purpose to cover the entire field, the power of the state legislature upon the subject ceases. *Sturges v. Crowninshield,* 4 Wheat. (17 U. S.) 122. Every court dealing with this subject holds that such exclusive purpose on the part of Congress is apparent from the act, which provides that "This act shall go into full force and effect upon its passage: Provided, however, that no petition for voluntary bankruptcy shall be filed within one month of the passage thereof, and no petition for involuntary bankruptcy shall be filed within four months of the passage thereof. Proceedings commenced under state insolvency laws before the passage of this act shall not be affected by it." The clause which preserves unaffected proceedings commenced under state insolvency laws before the passage of the act is held to be a plain indication that all other proceedings *are* affected by the act. There seems to be little room to doubt that, to quote the Massachusetts court, "the rights of all persons, in the particulars to which the act refers, are to be determined by the act from the time of its passage." *Parmenter Mfg. Co. v. Hamilton,* 172 Mass. 178, 51 N. E. 529. We conclude, therefore, that the statutes of this state relating to the subject of bankruptcy are suspended during the existence

of the federal Bankruptcy Act, and that such statutes afford the courts of this state no power or authority to discharge debtors from their debts.

But the further point is made by the respondent that the appellant, having acquiesced in these proceedings, having filed its claim and participated in the dividends realized from an administration of the estate, is not in a position to object to the discharge of the debtor. It is a general principle that one may not enjoy the benefits and privileges of a statute and, after so doing, escape its burdens by attacking its validity. *Booth Fisheries Co. v. Industrial Comm.* 185 Wis. 127, 200 N. W. 775; *Ibid.* 46 U. S. Sup. Ct. Rep. 491; *Daniels v. Tearney,* 102 U. S. 415; *Grand Rapids & I. R. Co. v. Osborn,* 193 U. S. 17, 24 Sup. Ct. 310; *Pera v. Shorewood,* 176 Wis. 261, 186 N. W. 623. "To do so," as said in *Pera v. Shorewood* (p. 264), "would enable parties to make use of a statute as a valid one during one stage of an action, and then, upon a certain point therein being reached, continue it upon the basis that it is invalid because from thence on it seems to be more advantageous to claim its invalidity." To this appellant responds that it is not attacking any feature of the law under which the estate of this debtor was administered and the proceeds distributed among the creditors. It points out that the statutory provisions under which the estate was administered up to the point of distribution are mere regulations of voluntary assignments for the benefit of creditors; that these statutory regulations are separate and distinct from the further provisions of our statutes providing for the discharge of the debtor from his debts. This very construction was placed upon our law in *Binder v. McDonald,* 106 Wis. 332, 82 N. W. 156. See, also, *Segnitz v. Garden City B. & T. Co.* 107 Wis. 171, 174, 83 N. W. 327; *Duryea v. Muse,* 117 Wis. 399, 94 N. W. 365. The history of the legislation demonstrates the correctness of this conclusion.

Ch. 80 of the Revised Statutes of 1878 related entirely to voluntary assignments and prescribed regulations therefor. Not until the enactment of ch. 385, Laws of 1889, did the insolvency law contain any provision for the discharge of debtors. The provisions of ch. 385, Laws of 1889, were in a separate chapter, known as ch. 80a, in San-born & Berryman's Statutes. Subsequent revisions of the statutes, however, have placed these provisions in ch. 80 along with the provisions relating to voluntary assignments. However, there can be no doubt that legislation prescribing regulations for the administration of voluntary assignments constitutes one subject of legislation, while the discharge of bankrupts constitutes quite another. A voluntary assignment for the benefit of creditors is a personal right inherent in the ownership of property. Such a right existed at common law independent of statute. The statutes do not confer the right, but statutes in this country have been enacted for the purpose of regulating the administration of the estate for the benefit of creditors. The discharge of the bankrupt from his debts constitutes the very essence of a bankruptcy law. While the administration of the estate of the bankrupt and the distribution of the proceeds thereof *pro rata* among his creditors is a usual, if not a necessary, incident of a bankruptcy law, the discharge of the debtor from his debts is no part of an assignment law. The winding up and a fair and equal distribution of the estate of insolvent debtors may arise in various ways, but where such a proceeding does not result in the discharge of the insolvent debtor, statutes regulating such a proceeding do not conflict in any manner with the bankruptcy law, and it has been squarely held by the supreme court of the United States that such laws are not superseded by the national Bankruptcy Act. *Mayer v. Hellman,* 91 U. S. 496; *Stellwagen v. Clum,* 245 U. S. 605, 38 Sup. Ct. 215; *Binder v. McDonald,* 106 Wis. 332, 82

N. W. 156.   It follows, therefore, that the features of our voluntary assignment act are separate and distinct from the discharge features first enacted as ch. 385, Laws of 1889. The discharge features of the Law of 1889 are suspended by the federal Bankruptcy Act.  The provisions regulating voluntary assignments do not contravene the federal Bankruptcy Act and are still in force.

In this case *Tarnowski* made a voluntary assignment for the benefit of his creditors.   In order for the creditors to have the benefit of the assignment, it was necessary for them to file and prove up their claims.   This by reason of the statutory provisions regulating voluntary assignments.   As the voluntary assignment was for the benefit of creditors, and as each creditor was entitled to his *pro rata* share of the estate, a creditor incurs no penalties or forfeitures by complying with statutory regulations necessary to enable him to acquire his *pro rata* share, except such penalties and forfeitures as are prescribed by the regulations themselves. As the statute providing for a discharge of the debtor is no part of the regulations governing voluntary assignments for the benefit of creditors, it follows that the appellant did not waive its right to object to the discharge of the debtor by filing its claim or accepting its *pro rata* share of the proceeds of the estate.

It is further objected that the order of discharge is not appealable.   Secs. 128.19 to 128.24, Stats., make provision for the proceedings to be followed in the way of application, notice, objections, trial, etc.   Sec. 128.25 then provides that "If it shall appear upon such hearing or trial that such debtor has in good faith made a voluntary assignment for the benefit of his creditors and has in all respects complied with the law in relation to such assignments, and with the provisions of the five preceding sections, such court or judge shall grant such debtor a discharge from his debts, which shall have the effect herein declared."   It is also provided in said section that "the order and discharge made and granted

shall be final and binding upon all of such creditors, subject
to their right to appeal, from any order, decision or judg-
ment made or entered in such proceeding, in the manner pro-
vided by law." · Sec. 128.27 provides that "Appeals may be
taken to the supreme court by .such insolvent debtor or by
any creditor from any order or judgment made or entered
in such proceeding, within the. time and in the manner
as appeals in ordinary civil actions, and whenever neces-
sary bills of exceptions may be settled as on such appeals."

In view of these various provisions there can be little
doubt that the legislature intended to authorize an appeal
from an order discharging a debtor. But, as we have said
that this law is suspended, it might not seem consistent
to refer the right of appeal to such suspended law. How-
ever, this does not necessarily follow. The law is suspended
in so far as it conflicts with the national Bankruptcy Act,
and when the circuit courts of this state assume to act under
the suspended law, the practice provided in the law itself
may be invoked to secure a review in this court of their
orders and judgments. But however that may be, we have
little difficulty in concluding that the order is appealable
under the general statute, which authorizes an appeal from
a final order affecting a substantial right made in special
proceedings. Sec. 274.33. Respondent contends that the
order appealed from does not fall within this designation,
and refers to the provisions of sec. 128.26 which provide
that "Upon the granting of such discharge the clerk of said
court shall immediately enter judgment in the judgment
docket thereof against said debtor and in favor of each of
his creditors who appears, . . . and shall also enter a dis-
charge thereof upon such docket by order of said court,
which shall discharge such debtor from all personal liability
in favor of such creditors as are in this section indicated."
He claims that the appeal should have been from this judg-
ment. But the appellant could not appeal from a judgment
in its favor. It is not injuriously affected by the judg-

ment. There is no provision which authorizes it to appeal from the discharge. The discharge is a mere ministerial act on the part of the clerk in obedience to the order of discharge. It is the order, not the judgment, that does the damage. The order is therefore "a final order affecting a substantial right made in special proceedings," and is plainly appealable under the general law.

*By the Court.*—Order appealed from is reversed.