Matter of WISCONSIN BUILDERS SUPPLY CO., Bankrupt.

No. 28366.

United States District Court
E. D. Wisconsin.

Dec. 20, 1955.

court appointed receiver under Chapter 128 of the Wisconsin Statutes, from proceeding further with the liquidation or administration of the assets of Wisconsin Builders Supply Company, and directing said receiver to deliver property in his possession, or under his control, to George D. Prentice, Jr., as trustee in bankruptcy, and for an accounting.

The proceeding in the Bankruptcy Court arose from an order of the Referee ordering Paul L. Moskowitz, as receiver of Wisconsin Builders Supply Company, under Chapter 128 of the Wisconsin Statutes, to show cause why he should not be required to deliver the property of the bankrupt in his possession or under his control to the trustee, and to account to the Bankruptcy Court for the disposition he had made of any of the bankrupt's assets. The order also enjoined the receiver from proceeding further in the liquidation of the bankrupt's assets.

On the return day, the receiver and certain creditors entered a special appearance challenging the jurisdiction of the Bankruptcy Court to proceed in a summary manner. The Court took these motions under advisement and consented to proceed to a hearing on the merits without prejudice to the special appearance.

The basis of the objection to jurisdiction was that the Circuit Court receiver had been appointed more than four months prior to the filing of the petition in bankruptcy and that therefore the Bankruptcy Court had no jurisdiction to make a summary turn-over order.

The facts and exhibits were stipulated to by the parties and based upon this evidence the Referee made the following Findings of Fact and Conclusions of Law:

George D. Prentice, Jr., Milwaukee, Wis., Trustee.

Robert D. Jones, Milwaukee, Wis., for trustee.

Hersh & Magidson, Milwaukee, Wis., for State Receiver.

TEHAN, Chief Judge.

This is a petition for review of an order entered by the Referee in Bankruptcy enjoining Paul L. Moskowitz, a state

"1. On October 9, 1951, at a meeting of the stockholders of the bankrupt, Wisconsin Builders Supply Co., a Wisconsin corporation, a resolution was adopted to dissolve the corporation and authorize any two of its officers to assign the property of the corporation to Paul L.

Moskowitz 'or any other suitable person to be appointed, upon petition, by the Circuit Court of Milwaukee County, Wisconsin, to liquidate the company's assets * * * to the end that should the company's assets prove insufficient to pay its creditors in full, the same may be paid in due proportion with any remainder after paying said creditors and the fees, costs, disbursements and expenses of said receivership to be distributed to the stockholders of the company in proportion to their holdings of its capital stock.'.

"2. By petition of its president and secretary dated and verified October 26, 1951, Wisconsin Builders Supply Co. petitioned the Circuit Court of Milwaukee County, under the provisions of Chapter 128 of the laws of the State of Wisconsin, for the appointment of Paul L. Moskowitz or some other suitable person as receiver to accomplish the purposes of the corporate resolution.

"3. On October 26, 1951, Wisconsin Builders Co., by its president and secretary, executed a written assignment of all of its assets, wheresoever situated, to Paul L. Moskowitz for the benefit of creditors of said corporation according to their priority.

"4. The Circuit Court of Milwaukee County, upon the ex parte application of Wisconsin Builders Supply Co., predicated entirely upon the petition of the said company above described, and without reference to the execution of the assignment for the benefit of creditors, entered an order on October 29, 1951, appointing Paul L. Moskowitz as receiver of and for Wisconsin Builders Supply Co., pursuant to the provisions of Chapter 128 of the Wisconsin Statutes.

"5. The order referred to in finding numbered 4 further provided that Paul L. Moskowitz file a bond in the penal sum of $4,000.00 with corporate surety, to be approved by the court; that the company deliver all of its account books and financial records and assets and property to the receiver; that any and all creditors of the company be enjoined from commencing or prosecuting any action against the company except to file claim within said proceedings; that the company within twenty days file with the clerk of the court an inventory of its assets and all of its creditors, with the addresses of said creditors and amounts due each of them, verified by the oath of one of its officers; that said receiver give notice to the creditors of the corporation by mail to the last known address of each creditor and by publication of a suitable brief notice of his appointment, once a week for three successive weeks; that the creditors of the corporation shall file their verified claims against the corporation within three months next after the completion of said publication.

"6. Paul L. Moskowitz qualified as such receiver by filing the required bond on October 29, 1951, and the bond was approved by the court on the same day.

"7. Paul L. Moskowitz further endorsed the assignment for the benefit of creditors with his written acceptance thereof for the benefit of creditors on October 27, 1951. The original of said assignment was duly filed with the clerk of the Circuit Court of Milwaukee County.

"8. Notice to creditors was given by mail and by publication as required by the order of the court, and due proof of such notice was made and filed.

"9. The physical assets of the corporation were sold by the receiver, Paul L. Moskowitz, for the price of $500.00 and the sale was duly confirmed by the order of the Circuit Court dated December 14, 1951.

"10. Before Paul L. Moskowitz as such receiver distributed any of

the assets or proceeds of said receivership, and on June 6, 1952, Wisconsin Builders Supply Co. filed a voluntary petition in bankruptcy in the United States District Court for the Eastern District of Wisconsin.

"11. Wisconsin Builders Supply Co. was adjudicated bankrupt by the United States District Court for the Eastern District of Wisconsin on the 6th day of June, 1952, and the matter referred to the Referee in Bankruptcy for further proceedings.

"12. On June 6, 1952, I appointed George D. Prentice, Jr. as receiver of the assets and property of the bankrupt. The receiver qualified by executing and filing the required bond.

"13. The first meeting of creditors of Wisconsin Builders Supply Co. was duly called for June 30, 1952, and notice thereof given to creditors as required by the Bankruptcy Act.

"14. At the first meeting of creditors George D. Prentice, Jr. was duly appointed trustee in bankruptcy of the assets of said bankrupt and he did thereafter duly qualify by filing the required bond.

"And as

"Conclusions of Law

"1. Chapter 128 of the Wisconsin Statutes of the State of Wisconsin establishes a comprehensive and exclusive court administered system for the voluntary and involuntary administration of insolvent assets for the benefit of creditors, and such statute which provides for such a judicial system is a Bankruptcy act in every essential feature.

"2. Chapter 128 of the Revised Statutes establishes a judicial system that possesses all of the characteristics, devices, machinery and equipment of the bankruptcy law as characterized by the National Bankruptcy Act and is therefore clearly within the field entered by Congress when it passed that Act; the proceedings under it are in fact tantamount in bankruptcy.

"3. The proceedings under Chapter 128 of the Wisconsin Statutes appointing Paul L. Moskowitz receiver over the property and estate of the bankrupt are void.

"4. This court not only has the power but the duty upon application having been made by the trustee in bankruptcy to order the State Court Receiver to deliver the property of the bankrupt in his possession or under his control to the trustee George D. Prentice, Jr. and to account to this court for the disposition made by him of the bankrupt's assets.

"5. The State Court Receiver Paul L. Moskowitz shall be enjoined from proceeding further with the liquidation or administration with the bankruptcy assets."

The petition for review objected to the finding that the petitioner was acting as receiver under authority of the Circuit Court of Milwaukee County and alleged that his status was that of assignee in a voluntary assignment for the benefit of creditors.

We have reviewed the stipulated facts and the exhibits and we find that they overwhelmingly support the Referee's finding. The original order of appointment of the Circuit Court for Milwaukee County dated October 29, 1951 (State Court Receiver's Exhibit No. 3) reads in part as follows:

"1. That upon filing of a bond in the penal sum of Four Thousand Dollars ($4000.00) with corporate surety to be approved by the court, said Paul Moskowitz be and he hereby is appointed receiver of and for said Wisconsin Builders Supply Co. its assets, property and effects;"

The other provisions of this order are all in keeping with the provisions of Chapter 128, Wisconsin Statutes 1951, and said order in no way reflects or even mentions the document of assignment. (State Court Receiver's Exhibit No. 1)

Other petitions, orders, notices, etc., which were part of the state court action also confirm the fact that Moskowitz was acting as receiver and not as an assignee.

The remaining objections deal with findings and conclusions regarding the main issue presented by the special appearances—whether those sections of Chapter 128, Wisconsin Statutes 1951, upon which were based the state court receivership have been suspended and rendered inoperative by the National Bankruptcy Act. We believe that all of these objections can be discussed jointly.

█ Article I, Section 8, Clause 4 of the Federal Constitution gives Congress the power "To establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States;". It is generally recognized that in granting this latter power to the Federal Government, the people thereby limited the power which remained with the individual states. The degree and nature of this limitation, however, has never been so precisely defined that one can readily determine the issue presented here.

In the early case of Sturges v. Crowninshield, 1811, 4 Wheat. 122, 4 L.Ed. 122, Chief Justice Marshall declared that the power to legislate in the bankruptcy field was available to the states unless and until the Federal Government exercised the power.

> "It is not the mere existence of the power, but its exercise, which is incompatible with the exercise of the same power by the States. It is not the right to establish these uniform laws, but their actual establishment, which is inconsistent with the partial acts of the States."

█ In examining the history of this doctrine, it is well to remember that during the greater part of the history of our country there was no federal bankruptcy law in effect. The states themselves, however, generally made use of their legislative powers in this field during the first one hundred years of our existence as a republic. The sporadic exercise of the federal bankruptcy powers in the periods from 1800 to 1803, 1841 to 1843, 1867 to 1878, and then from 1898 to the present day gave rise to litigation involving the question of the suspension of state law by reason of the enactment and operation of these federal bankruptcy acts. From these cases the doctrine has come to be well settled "that state insolvency laws which are tantamount to bankruptcy because they provide for an administration of the debtor's assets and a winding up of his affairs similar to that provided by the national act are suspended while the latter remains in force, and proceedings under them are utterly null and void whether commenced within four months of the filing of a petition in bankruptcy or before." Straton v. New, 283 U.S. 318, 51 S.Ct. 465, 469, 75 L.Ed. 1060.

This pronouncement leaves us with a difficult problem of deciding whether the Wisconsin Act in question is "tantamount to bankruptcy". In support of his position that it is not, the state court receiver has cited several cases which emphasize the presence or absence of a discharge provision in a state Act as being significant in determining this issue. Stellwagen v. Clum, 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507; Pobreslo v. Joseph M. Boyd Co., 287 U.S. 518, 53 S.Ct. 262, 77 L.Ed. 469.

█ It must be acknowledged that the language in these cases does indicate the great importance which is attached to the element of discharge in deciding whether state legislation in this field is suspended by the federal Bankruptcy Act. 11 U.S.C.A. § 1 et seq. However, it is equally clear from a reading of these and other cases that the presence or absence of a discharge provision in state legislation is not the sole test to be applied in determining whether a state Act is suspended or operative.

While observing in the Stellwagen case that all the cases lay stress upon the fact that one of the principal requisites of a true bankruptcy law is for the benefit of the debtor in that it discharges his

future acquired property from the obligation of existing debts, the United States Supreme Court stated specifically that it was not deciding that there may not be state insolvent laws which are suspended by the federal Act, although the state Acts do not provide for a discharge of indebtedness. This was also noted in Hammond v. Lyon Realty Co., 4 Cir., 59 F.2d 592.

Other federal courts have held specifically that state Acts may be suspended by the federal Act even though the state Acts do not provide for a discharge. In the case of In re Smith, D.C., 92 F. 135, the question involved the validity of the laws of the state of Indiana. The state law had no provision for the discharge of the insolvent debtor. In discussing the validity of the state Act, the Court said at page 138:

"All matters embraced in the bankruptcy act must be controlled and governed by its provisions. Among these are the right and duty of the bankruptcy court to have insolvent estates settled in and by it, under and in accordance with the provisions of the bankruptcy act; to have acts of bankruptcy affecting the settlement of estates determined by it (section 3); to have the rights of debtors to file voluntary petitions, and of creditors to file involuntary petitions, determined by it (section 4); and to have liens and preferences governed by it (sections 60, 67). These and various other provisions of the bankrupt act affecting the conduct and rights of debtors and creditors are different from those found in the statute of this state touching general assignments. In my opinion, the operation of the state law is suspended, and the state courts are without any jurisdiction or authority to administer the estates of bankrupts or insolvents."

The case of In re Salmon & Salmon, D.C., 143 F. 395, involved the statutes of the State of Missouri. Here again the state statutes did not provide for dis-charge of the debtor. The action there involved the dissolution of a state bank. The opinion contains the following analysis of this problem: At page 404

"The object to be attained by the proceeding in the state court is the ascertainment of the claims against the estate, conservation and disposition of its assets, and the distribution of the proceeds to all the depositors and creditors as they may be found entitled by the special state tribunal designated in the act for such purpose. In thus far the object sought to be accomplished and the end attained by the proceeding in the state court, under the act in question, is the same in effect as that sought to be attained in the bankruptcy court under the national bankrupt act. True, the state act does not provide for a discharge of the insolvent debtor or debtors owning the bank upon the surrender and application of all nonexempt property to the payment of the debts of the bank, but the absence of such provision from the state act is not thought to control or determine its character as an insolvency law, for, if the act contained an express provision for discharge, it would be void as to pre-existing creditors not participating in the proceeding. * * *

"Again, to render a state insolvency law inoperative because in contravention of the federal bankrupt act, it is not essential that the state act shall contain a provision for the discharge of the debtor. It is rather thought such provision for discharge is an incident to, but not an essential part of, such law."

The case of In re Weedman Stave Co., D.C., 199 F. 948, 950, involved the statutes of the state of Arkansas. The Court said:

"The first question to be determined is whether the Arkansas statute, under which the proceedings in the state court were had, is an insolvency law. What constitutes an in-

solvency law? The elements of an insolvency law are insolvency, surrender of property, its administration by a receiver or trustee, distribution of the assets among the creditors, and a provision for priorities or other matters not permissible in the absence of such a statute. A provision for the discharge of the debtor from the unpaid balances of his debts is not essential to make it an insolvency law."

■ If the absence of a discharge provision is not the sole test of the validity of state legislation in this field, how then is this question to be determined? We believe, as the authorities set forth above have indicated, that the answer to the question is to be ascertained by an examination of all of the provisions of the particular state statute in question and a comparison of its provisions and purposes with those of the federal Act.

■■ We have already noted that the states are free to act in this area unless the Federal Government exercises its constitutional right to establish a uniform bankruptcy law. Sturges v. Crowninshield, supra. The extent to which that freedom is abridged by the exercise of the federal power in this field is clearly set forth in the case of International Shoe Co. v. Pinkus, 278 U.S. 261, 49 S.Ct. 108, 110, 73 L.Ed. 318, which involved the Arkansas statute.

"The national purpose to establish uniformity necessarily excludes state regulation. It is apparent, without comparison in detail of the provisions of the Bankruptcy Act with those of the Arkansas statute, that intolerable inconsistencies and confusion would result if that insolvency law be given effect while the national act is in force. Congress did not intend to give insolvent debtors seeking discharge, or their creditors seeking to collect claims, choice between the relief provided by the Bankruptcy Act and that specified in state insolvency laws. States may

not pass or enforce laws to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations."

■ This does not mean, however, that the federal Bankruptcy Act prevents a state from having valid and effective legislation dealing with debtor and creditor rights and remedies in the fields of fraudulent conveyances (such as involved in Stellwagen v. Clum, supra) or voluntary assignments (such as involved in Mayer v. Hellman, 91 U.S. 496, 23 L.Ed. 377 and Pobreslo v. Joseph M. Boyd Co., 287 U.S. 518, 53 S.Ct. 262, 77 L.Ed. 469) or equity receiverships (such as involved in In re Schwartz Bros., Inc., D.C., 58 F. Supp. 761). These fields of law were recognized as distinct from bankruptcy law at the time of the adoption of the Constitution and the exercise by the Federal Government of its power in the bankruptcy field in no way impairs the effectiveness of such state legislation.

For example, Chapter 80 of the Revised Statutes of 1878, which became Chapter 128 of the Wisconsin Statutes, contained provisions regulating voluntary assignments made for the benefit of creditors. There was added to it in 1889 provisions for discharge of debtors. These latter provisions were recognized as being superseded by the National Bankruptcy Act in Re Voluntary Assignment of Tarnowski, 191 Wis. 279, 210 N. W. 836, 838, 49 A.L.R. 686. By an analysis of the legislative history, the Court found that the offending discharge features of the Act were severable, and approved the remaining provisions as legislation regulating voluntary assignments. The Court stated:

"A voluntary assignment for the benefit of creditors is a personal right inherent in the ownership of property. Such a right existed at common law independent of statute. The statutes do not confer the right, but statutes in this country have been enacted for the purpose of regulating the administration of the estate for the benefit of creditors."

The same statute was again considered by the Wisconsin Court in the case of Pobreslo v. Joseph M. Boyd Co., 210 Wis. 20, 242 N.W. 725, 728, and the Court again affirmed its belief that the provisions of Chapter 128 in question were enacted for the purpose of regulating voluntary assignments. The Court quoted with approval from the case of Mayer v. Hellman, supra, which involved an Ohio statute regulating voluntary assignments. This quotation in part is as follows:

" 'In the argument of the counsel of the defendant in error, the position is taken that the Bankruptcy Act suspends the operation of the act of Ohio regulating the mode of administering assignments for the benefit of creditors, treating the latter as an insolvent law of the State. The answer is that that statute of Ohio is not an insolvent law in any proper sense of the term. It does not compel, or in terms even authorize, assignments: it assumes that such instruments were conveyances previously known, and only prescribes a mode by which the trust created shall be enforced. It provides for the security of the creditors by exacting a bond from the trustees for the discharge of their duties; it requires them to file statements showing what they have done with the property; and affords in various ways the means of compelling them to carry out the purposes of the conveyance. There is nothing in the act resembling an insolvent law. It does not discharge the insolvent from arrest or imprisonment; it leaves his after-acquired property liable to his creditors precisely as though no assignment had been made. The provisions for enforcing the trust are substantially such as a court of chancery would apply in the absence of any statutory provision. The assignment in this case must therefore be regarded as though the statute of Ohio, to which reference is made had no

existence. There is an insolvent law in that state; but the assignment in question was not made in pursuance of any of its provisions. The position, therefore, of counsel, that the Bankruptcy Law of Congress suspends all proceedings under the insolvent law of the state, has no application."

The finding of the Wisconsin Court that Chapter 128 constituted a statute regulating voluntary assignments and thus was not in conflict with the National Bankruptcy Act was upheld by the United States Supreme Court. Pobreslo v. Joseph M. Boyd Co., 1933, 287 U.S. 518, 53 S.Ct. 262, 77 L.Ed. 469.

However, in the year 1937 the Wisconsin legislature saw fit to repeal all of these sections of Chapter 128 which had been approved and upheld by both the Wisconsin Supreme Court and the United States Supreme Court. In its place was enacted Chapter 128 which with the amendments of 1939 assumed its present form.

The issue presented by the parties on this review places before the Court the following question for resolution:

Did the Wisconsin legislature in enacting Chapter 128 in its present form so substantially change the character, purposes, powers and procedures of the Act that from an Act merely regulatory of voluntary assignments it became a comprehensive and exclusive court administered system for the voluntary and involuntary administration of insolvent estates for the benefit of creditors and an Act tantamount to bankruptcy?

Such an inquiry which requires the study and analysis of three separate legislative acts presents a formidable task. To our mind the most understandable approach to the problem is to first describe the powers and function of the present state law, second to point out those sections of that present law which either were not contained in the old law or were substantially changed, and third and last to compare the present law with the National Bankruptcy Act. In our discussion of these points we have found

the Referee's opinion very helpful and have made generous use of his efforts.

Chapter 128, set forth in an appendix hereto, as presently constituted contains twenty sections. The first section of Chapter 128, Section 128.01, makes all assignments for the benefit of creditors subject to the provisions of the Chapter and subject to the jurisdiction of the Circuit Court. The grant of jurisdiction is comprehensive, and extends to the making of all necessary orders or judgments. It appears such jurisdiction is made exclusive, since where insolvency exists, or an assignment for the benefit of creditors has been made or attempted, Section 128.02 deprives all creditors of all remedies except that provided by the Chapter, namely, the administration of the estate under the direction of the Circuit Court.

Section 128.03 provides that a debtor may dissolve liens against his property by making an assignment of his non-exempt property within thirty days of the origin of the lien, and Section 128.04 defines insolvency.

All estates, whether introduced into court by voluntary or involuntary procedure, must under the mandatory provisions of Section 128.05, be administered solely by a court appointed receiver. There is no language in this or any other section indicating that an assignee designated by the debtor in the instrument of assignment for the benefit of creditors has any standing or function whatsoever, except as Section 128.05 imposes a duty on the assignee designated to file the assignment with the court. Under this section, the duty is placed upon the court, at the moment of the filing of the assignment, to appoint a receiver to administer the estate under the provisions of the Chapter. It should be observed that this duty is mandatory and not merely permissive or optional. There appears to be no prohibition against appointing the designated assignee as such receiver, but on the other hand, there is no language directing the court to accept the debtor's nomination in the person of the designated assignee. The

court is entirely free to make its own appointment or to order a meeting of creditors for the purpose of election of a receiver.

Section 128.06 provides for the commencement of involuntary proceedings against an insolvent, who within four months prior to the commencement of the action has committed one of five enumerated acts. In addition Section 128.06 provides that where a voluntary assignment is attempted and the assignee fails or refuses to submit the administration of the estate to the Circuit Court, the court upon the petition of any single creditor and without proof of insolvency shall require the assignee to comply with the provisions of this Chapter. In other words, where the instrument of assignment is not used solely to submit the estate to the court it is deemed and dealt with as an act of bankruptcy.

Section 128.07(1) defines a preference, and Section 128.07(2) makes certain preferences voidable. This later section provides that if a debtor shall have given a preference within four months before the filing of a petition or assignment under this Chapter and the person receiving it had reasonable cause to believe that such transfer would effect a preference, it shall be voidable by the receiver.

Section 128.08 gives the court power to sequestrate the property of a debtor and appoint a receiver for it whenever a petition under Section 128.06 is filed, or when an execution against a domestic corporation is returned unsatisfied.

Section 128.09 requires the filing of a bond by the receiver or assignee in order to qualify.

The receiver remains under the full supervision and control of the court, subject to removal for cause as defined in Section 128.10, or without cause upon the application of a majority of creditors. It appears clear that after his appointment, the receiver's power, his title and his function are established and prescribed by the provisions of Chapter 128, and are not in any manner or to any de-

gree dependent upon the instrument of assignment.

Section 128.11 gives the court power to authorize provisional remedies to the end that equal distribution of all assets recovered among the creditors of the debtor be had. Under Section 128.12 proceedings once commenced may be dismissed only after a hearing on notice to all the creditors, and Section 128.13 requires the debtor to file an inventory of his assets in either the voluntary or involuntary proceedings.

Section 128.14 provides that creditors must file verified claims within three months from the date of the filing or appointment of a receiver or be barred from participating. This section also provides for the issuance of an injunction against other actions by creditors.

Section 128.15 provides a procedure for the determination of disputed claims; Section 128.16 contains provisions for discovery proceedings; and Section 128.17 provides for distribution of the assets according to certain stated priorities.

Section 128.18 provides that claims which for want of record or for other reasons would not have been valid as against creditors of the debtor armed with process pursuant to which such property has been attached or levied upon, shall not be valid against the estate. This section also invalidates liens obtained by judicial process within four months before the commencement of the proceedings, if the debtor was insolvent or if such lien was sought and permitted in fraud of the provisions of the Act except that the receiver may at his option be subrogated to the rights of the holder of such lien for the benefit of all creditors.

Under the provisions of Section 128.19 title is legislated out of the debtor and into the receiver or assignee. No conveyance is necessary. The section states that upon his qualification the receiver shall be vested by operation of law with the title of the debtor in all nonexempt property. It is to be noted that the powers conferred by Sections 128.18 and 128.19 are the same whether the proceedings were instituted voluntarily by the filing of an assignment, or involuntarily upon the petition of creditors without the existence of an assignment for the benefit of creditors.

The final provision of the Act, Section 128.20, establishes the procedure to be followed by the receiver in accounting for the property received and distributed by him.

This section by section treatment of the present Act, we believe, provides a fair and understandable description of the powers, procedures and scope of that Act.

We now proceed to an examination and comparison of the State Act as it existed at the time of Pobreslo v. Joseph M. Boyd Co., supra with the present law. Such a study and comparison impresses one with the fact that the Wisconsin legislature in 1937 and 1939 made substantial and important changes in the Act.

On July 30, 1931, when the proceedings in Pobreslo v. Joseph M. Boyd Co. were commenced in the state court, Chapter 128 consisted of twenty-nine sections, eleven of which related to the discharge of the debtor. These discharge features, however, had been held suspended by the federal Bankruptcy Act in the Tarnowski case in 1926 and hence we need consider only the remaining eighteen sections which had been held by the Wisconsin Court to be provisions regulating voluntary assignments for the benefit of creditors and not in contravention of the federal Act.

We shall confine ourselves here to enumerating certain important points of difference in these Acts and leave the matter of comment until later in the opinion.

At the outset we point out the fact that the new law provides for the appointment of a receiver who well may be some one other than the assignee. In fact, the assignee may never take title to the property of the debtor and really has no function to perform other than to file the assignment document with the prop-

er court. The present Act also provides for the commencement of insolvency proceedings against an insolvent under circumstances not previously permitted.

Again the new Act contains a definition of a preference and provisions making certain preferences voidable, which were not found in the prior Act.

The new Act provides for meetings of creditors who may have control over the proceedings without respect to the provisions of the document of assignment.

The new law provides a time within which claims must be filed in order to participate in dividends. The Act also permits the court to enjoin proceedings by any other creditor against the insolvent.

Further the new law transfers title from the debtor to the receiver by operation of law and not under the assignment.

Then too the new law gives to the receiver a title which may be very substantially different from that which he could obtain under an assignment.

It is only when one has compared the present law with the National Bankruptcy Act that one receives the full impact of how substantial, sweeping and far reaching these new powers and procedures really are. It appears to us that in enacting Chapter 128 in 1937–1939 the legislature did not approach its task by first deleting the discharge provisions suspended by Tarnowski and then building about that which had been approved in Pobreslo; rather it would seem that the draftsman used as his model the National Bankruptcy Act since the new state Act incorporates all of the salient and important features of that Act either verbatim or with some minor modification of detail excepting only the provision for a discharge.

The following examples we believe substantiate our conclusion in this respect:

The definition of insolvency contained in Section 128.04 includes the identical definition of insolvency contained in the federal Bankruptcy Act.

Five of the six "Acts of Bankruptcy" defined in Section 3, sub. a, of the National Bankruptcy Act, were adopted almost verbatim in Section 128.06 as grounds for the invocation of the state court's jurisdiction by involuntary proceedings. These acts are: (1) the fraudulent transfer or concealment of property; (2) the preferential transfer; (3) suffering a lien by legal proceedings, while insolvent; (4) written admission of inability to pay debts and a willingness to be adjudged insolvent; (5) the assignment of assets for the benefit of creditors.

Here we find the grounds and the machinery for the throwing of a debtor into involuntary insolvency, one of the essential characteristics of a bankruptcy system. They are as broad and comprehensive as those found in the National Act.

The present Chapter 128, in Section 128.06, through the revision of 1937, like its national counterpart, surrounds the invocation of the court's jurisdiction with a time zone of four months, a period that begins to run in its backward course with the day of the filing of the involuntary petition (the filing of the assignment in the case of voluntary proceedings). The object of the time zone and the legislation pertinent to it is, of course, to stop "the race of diligence" of creditors individually, through the invocation of the court's jurisdiction, and thereby insure that the estate may be distributed free from attachments, levies and liens obtained within the four month period. This time zone is computed under the Wisconsin Act from the date of the invocation of the court's jurisdiction and not from the date of a voluntary assignment, a very significant observation in ascertaining the true import of the Act.

The definition of a preference in Section 128.07(1) adopts the essentials of the bankruptcy definition in Section 60 of that Act, namely, that it enables the creditor "to obtain a greater percentage of his debt than some other creditor of the same class."

Section 128.07(2) which makes certain preferences voidable is an adoption with modification of Section 60, sub. b, of the Bankruptcy Act.

Section 128.10 provides for meetings of creditors who are given a type of control over the proceedings similar to that which creditors exercise under the bankruptcy law.

Section 128.12 provides a procedure for dismissal of voluntary proceedings and for dismissal following lack of prosecution, which are similar to those which are contained in the Bankruptcy Act.

Section 128.14 requires creditors to file a claim within three months in order to participate in any dividends, while the National Bankruptcy Act gives creditors six months. This section also provides for enjoining other proceedings by creditors as does the National Bankruptcy Act. This provision in the state Act can be as effective as a discharge and if interpreted literally conflicts with the right of a creditor to file an involuntary petition with a bankruptcy court.

Section 128.15 provides a manner of determining disputed claims and provides that secured creditors may participate in the proceedings and may file claims for such amount as their claims exceed the value of the security held by them. This also is similar to the provision for secured creditors in the Bankruptcy Act.

Section 128.17 which deals with the order of distribution, is substantially similar to Section 64 of the Bankruptcy Act.

Section 128.18 which invalidates certain liens in these proceedings establishes a concept which is taken from the "strong arm" provision of the National Bankruptcy Act, Section 70, sub. c, which confers upon the trustee in bankruptcy by force of law as to property of the bankrupt, the status of a judgment creditor holding an execution duly returned unsatisfied.

The substance of Section 128.19 of the present Act can be found in Section 70, sub. a, of the National Bankruptcy Act. One of the basic fundamentals of bankruptcy legislation as presently understood and as characterized by the National Bankruptcy Act, is a procedure to divest the debtor of title to all of his assets on hand, the title passing to a receiver or trustee, who under the direction of the court should liquidate them and distribute the proceeds. The phenomenon is that title is legislated out of the debtor and into the representative of the creditors for whom the statute provides. No conveyance is necessary. This is exactly what Section 128.19 does when it provides that the receiver upon his qualification shall be vested by operation of law with the title of the debtor in his property except that which is exempt. The rights and title vesting in a receiver appointed under this Act are substantially greater than those of an assignee under an assignment for the benefit of creditors.·

It is to be noted that the powers conferred by Sections 128.18 and 128.19 are the same whether the proceedings were instituted voluntarily by the filing of an assignment or involuntarily upon the petition of creditors without the existence of an assignment for the benefit of creditors.

The only conclusion that we can come to from the study and analysis that we have made of these three legislative acts is that Chapter 128 in its present form is so substantially changed in its character, purposes, powers and procedures that from an Act merely regulatory of voluntary assignments, it has become a comprehensive and exclusive court administered system for the voluntary and involuntary administration of insolvent estates for the benefit of creditors and that it is an Act tantamount to bankruptcy. As such, the Wisconsin Act is clearly one of those which are suspended by the federal legislation.

The only substantial difference between the Wisconsin Act and the Bankruptcy Act is that the state Act does not provide for a discharge in form. With regard to corporations, however, (such as the bankrupt in this matter) the grant-

ing of a discharge is meaningless. As has been noted the injunction provision of the Wisconsin statute may well be an effective substitute for a discharge. So completely and openly does the Wisconsin Act borrow from the National Bankruptcy Act that the conclusion is irresistible that the draftsman read Pobreslo, incorrectly we believe, as teaching that any legislation in this field no matter how comprehensive, duplicative and far reaching will not contravene the federal Act and thus be suspended provided it does not include a provision for discharge of the debtor. The similarity of the Wisconsin Act and the federal law has been acknowledged by the Wisconsin Supreme Court. In the case of Industrial Commission v. Sanitary Baking Co., 242 Wis. 115, 7 N.W.2d 603, 604, the Court examined the provisions of Chapter 128 and concluded

"It will thus be seen that this chapter is a species of insolvency act following rather closely some of the provisions of the bankruptcy act."

Counsel for the state court receiver have argued that even if the provisions for involuntary proceedings under the Wisconsin Act be held to conflict with the federal Act, the state statute should be held valid as it applies to voluntary proceedings.

All of these sections of Chapter 128 which were created by Chapter 431 of the Laws of 1937 constitute with the 1939 amendments a comprehensive system covering both voluntary and involuntary actions. The provisions generally apply to both voluntary and involuntary actions and the Act does not lend itself to the application of the doctrine of severability. Under the provisions of this law a proceeding which commences as a voluntary one may be turned in effect into an involuntary one, as where the assignment document is not filed, Section 128.-06(4), or where the action is not prosecuted diligently. Section 128.12(2). To take out of the Act all of its involuntary phases would result in legislation having little resemblance to that passed by the legislature. We do not perceive this to be a proper application of severability. Certainly it cannot be argued that we can isolate from the present Chapter anything substantially resembling the law as it was in effect at the time of the Pobreslo case.

It has been said that state laws are suspended only to the extent of actual conflict with the system provided by the Bankruptcy Act of Congress. Stellwagen v. Clum, supra. From this it is suggested that a state law can be valid and enforceable so long as its result is not dissimilar to that which would result under the federal Act. We do not so interpret the Stellwagen case. There was involved in that case a statute providing a creditor's remedy which the trustee in bankruptcy sought to assert. The Supreme Court found no conflict between the operation of this creditor's remedy statute and the Bankruptcy Act. If in fact similarity of result were the end to be achieved, a state could merely enact the federal Bankruptcy Act, including the discharge provisions and have a valid and enforceable act. This is obviously not the case. "Conflict" as used in the cases does not mean dissimilarity of result. It means rather similarity of purpose, substantive provisions and procedure. As so interpreted the state Act does conflict with the National Act.

It is with the utmost reluctance that we as a federal district court find a state Act to be suspended and inoperative even though we know that the Congress has set up in the federal court system and in the administrative office of the court, an elaborate system for the administration of bankruptcy proceedings, and the state has made no special provisions for its courts in this respect. We would not rule in this manner, unless we were convinced that such a finding is clearly indicated and one which should not be avoided because of the importance of the issue presented.

We hold that all of the provisions of Chapter 128 dealing with the marshaling, liquidation and ratable distribution

of debtor's assets are suspended during the existence of the federal Bankruptcy Act.

It Is Therefore Ordered: That the order of the Referee enjoining the state court receiver from proceeding further with the liquidation or administration of the assets of the bankrupt and directing him to deliver the property of the bankrupt in his possession or under his control to the trustee in bankruptcy, from which order this review was taken, is hereby affirmed.

### Appendix

### Wisconsin Statutes 1951

### Chapter 128.

"128.01 Jurisdiction. The circuit courts shall have supervision of proceedings under the provisions of this chapter and may make all necessary orders and judgments therefor; and all assignments for the benefit of creditors shall be subject to the provisions of this chapter.

"128.02 Assignment; mistakes; amendments. (1) Voluntary assignments for the benefit of creditors may be made to an assignee who is a resident of this state, who shall, before taking possession of the property assigned and before taking upon himself any trust conferred by the assignment, file the assignment and deliver to the clerk of the circuit court of the county in which such assignor resides or has his principal place of business at the time of the assignment, a bond as required by section 128.09.

"(2) No assignment shall be void because of any defect, informality or mistake therein or in the bond, inventory or list of creditors accompanying the same; and the court may direct the amendment of the assignment or of any other paper to effect the intention of the assignor or assignee, or to obtain a distribution of the assignor's assets as provided in this chapter, and any such amendment shall relate back to the time of the execution of the paper. No mistake in filing a copy instead of an original or any like mistake or inadvertent failure to comply with the provisions of this chapter shall void the assignment. No creditor shall, in case a debtor has attempted to make an assignment for the benefit of creditors, or in case of the insolvency of any debtor, by attachment, garnishment or otherwise, obtain priority over other creditors upon such assignment being adjudged void, or in consequence of any sale, lien or security being adjudged void; but in all such cases the property of such debtor shall be administered for the ratable benefit of all his creditors under the direction of the court by the assignee or by a receiver.

"128.03 Liens by legal proceedings; assignment. When a lien has been obtained by legal proceedings against the property of a debtor he may, within thirty days thereafter, make an assignment of all his nonexempt property for the benefit of all his creditors, whereupon such lien shall be dissolved and the property shall be turned over to the assignee.

"128.04 Definition of insolvency; time. A person shall be deemed insolvent within the provisions of this chapter whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation be sufficient in amount to pay his debts, or if an execution be returned unsatisfied or if he shall make an assignment for the benefit of creditors.

"128.05 Assignee's consent, recording copy of assignment. (1) The assignee shall indorse in writing his acceptance of the assignment, and shall file such assignment with the clerk of the court in the

county where the debtor has his residence or principal place of business. The court shall, upon the filing of such assignment, designate a receiver, or order a meeting of creditors for the purpose of election of such receiver, to administer the debtor's estate pursuant to this chapter.

"(2) A certified copy thereof may be recorded in the office of the register of deeds of any county wherein lands are conveyed by such assignment in the same manner and with the same effect as other conveyances.

"128.06 Involuntary proceedings. (1) An action for the appointment of a receiver and administration under the provisions of this chapter may be commenced by two or more of his creditors owning claims of not less than two hundred dollars in the aggregate against an insolvent debtor whenever such debtor shall have within four months prior to the commencement of such action:

"(a) Conveyed, transferred, concealed or removed, or permitted to be concealed or removed, any part of his property with intent to hinder, delay or defraud his creditors, or any of them; or

"(b) Transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors; or

"(c) Suffered or permitted, while insolvent, any creditor to obtain a lien through legal proceedings, and not having at least five days before a sale or final disposition of any property affected by such lien vacated or discharged such lien; or

"(d) Made a fraudulent or collusive assignment for the benefit of his creditors; or

"(e) Admitted in writing his inability to pay his debts and his willingness to be adjudged insolvent on that ground.

"(2) If the debtor denies any of the allegations of the petition, he shall appear in court on the hearing, with his books, papers and accounts, and submit to an examination, and in case of his failure to do so the burden of proving his solvency shall rest upon him.

"(3) Upon the commencement of the action the court shall promptly set a date for a hearing on notice to the plaintiffs and the debtor. At the hearing any intervening creditors, as well as the plaintiffs and the debtor, shall be heard, and the court without the intervention of a jury shall determine the issues and either make an order adjudging the debtor to be subject to the proceedings under this chapter, or dismiss the proceedings.

"(4) The assignee under a voluntary assignment not previously filed under the provisions of this chapter shall upon petition of any creditor without proof of the insolvency of the assignor be required to file the assignment and comply with the provisions of this chapter.

"128.07 Preferred creditors. (1) A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against him in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class.

"(2) If the debtor shall have given a preference within four months before the filing of a petition, or an assignment, or after the filing of the petition and before the appointment of a receiver, or after the filing of an assignment and before the qualification of the assignee, and the person receiving it, or to be benefited thereby, or his agent acting therein,

shall have had reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the receiver or assignee, and he may recover the property or its value from such person.

"128.08 Insolvent corporations; receiver; custodian. (1) The court within the proper county may sequestrate the property of a debtor and appoint a receiver therefor:

"(a) When a petition under section 128.06 shall be filed.

"(b) When an execution against a domestic corporation is returned unsatisfied in whole or in part.

"(2) In either of such cases the court may in its discretion appoint a custodian to take possession and may provide for a meeting of creditors for the election of a receiver by creditors.

"128.09 Bond. In order to qualify, the receiver or assignee shall give to and file with the clerk of the court a bond sufficient to cover all property likely to come into his hands, conditioned in the usual manner with surety to be approved by the judge having supervision of the proceedings.

"128.10 Meetings of creditors; removal or death of receiver. (1) The court may provide for hearings and meetings of creditors to elect a receiver or to pass upon matters submitted to creditors by a majority vote in number and amount of claims.

"(2) The court may, upon notice and hearing, remove any receiver or assignee who is shown to be incompetent or to have become disqualified, or to have wasted or misapplied any of the trust estate; and shall remove any assignee or receiver upon the application of a majority of the creditors who shall represent a majority in number and amount of claims against said estate, and order a settlement of his account and the surrender of all the estate to a successor, and shall appoint the person named in such petition or some suitable person as his successor, who shall qualify in the manner provided by this chapter; and in place of any receiver or assignee who shall die or be removed, may appoint another who shall give bond and administer said estate pursuant to the provisions of this chapter.

"128.11 Provisional remedies. In all actions authorized by this chapter appropriate provisional remedies may be had and final relief administered to the equal distribution of all assets recovered among the creditors of the debtor, and the court may make such orders for the payment of costs and expenses as may be just. An action or proceeding authorized herein for the benefit of all creditors may be taken by a creditor although his demand is not due at the commencement thereof.

"128.12 Dismissal; intervention. (1) After the designation of a receiver or custodian by the court, proceedings under this chapter shall not be dismissed for want of prosecution or by consent of parties until after notice to creditors, and the court shall, before entertaining an application for dismissal, require the debtor to file a list, under oath, of all his creditors, with their addresses, and shall cause notice to be sent to all such creditors of the pendency of the application and shall fix a date for such hearing so as to allow parties in interest an opportunity to be heard.

"(2) When proceedings have been commenced under this chapter and are not diligently prosecuted or are so delayed as to cause possible injury to other creditors, any creditor may intervene for the purpose of obtaining a continuance of the administration or dismissal of the proceedings.

"128.13 Inventory of assets. With the filing of an assignment or

within ten days after the appointment of a receiver, the debtor shall file with the clerk of the court a correct inventory of his assets and a list of his creditors, stating the place of residence of each and the amount due to each, which inventory and list shall be verified by his oath, but no mistake therein shall affect the rights of any creditor.

"128.14 Notice; injunction; time of filing claims. (1) The court shall require creditors to file their verified claims within three months from the date of the filing of an assignment or the appointment of a receiver and may enjoin proceedings by any other creditor against the insolvent. The receiver or assignee shall be required to give notice promptly to all creditors of the pendency of the proceeding, the injunction against other actions and the time within which creditors are required to file claims. Such notice shall be given by mail directed to the last known address of each creditor and shall be published once a week for three successive weeks in a newspaper in the county or, if none, in an adjoining county.

"(2) Creditors not filing claims within the time limited may be precluded from participation in any dividend which may be declared.

"128.15 Objections to claims; appeal; secured claims. (1) At the expiration of the period of time limited for the filing of claims, the receiver or assignee shall file with the clerk proof of publication of notice and a list of the creditors to whom such notice was made with the debts thereof respectively verified by his affidavit, and also a list of claims filed stating the names of creditors, residences and amounts claimed respectively. At any time thereafter the receiver or assignee or, upon his refusal or failure to act, any creditor may file written objections to any claim specifying the grounds thereof and serve a copy thereof in such manner as the court may order

upon such claimant. Depositions may thereafter be taken as in civil actions. The court on the application of either party, shall fix by order a time when such objections shall be heard, which shall be served as therein prescribed upon the adverse party. Upon the final hearing the court shall make such order as shall be just and may compel the payment of costs in its discretion. An appeal may be taken from such order within thirty days from the entry thereof, but not afterwards, in the manner provided for taking appeals from orders in civil actions.

"(2) Claims of secured creditors may be allowed to enable such creditors to participate in the proceedings but shall be allowed for such sums only as shall be proved to be due, over and above the value of the securities, and dividends shall be paid only upon the excess of the claim over the value of the security at the time of the commencement of the proceedings.

"128.16 Discovery. The court may compel the debtor to discover any property alleged to belong or to have belonged to him, the disposition thereof and the consideration and all the circumstances of such disposition. Every officer, agent or stockholder of a corporation and every person to whom it shall be alleged that any transfer of property has been made, or in whose possession or control the same is alleged to be, may be compelled to testify in relation thereto and to the transfer or possession of such property; but such witness shall not be liable to criminal prosecution or proceeding for any act regarding which he is so compelled to testify.

"128.17 Order of distribution. (1) The order of distribution out of the debtor's estate shall be as follows:

"(a) The actual and necessary costs of preserving the estate subse-

quent to the commencement of the proceedings.

"(b) Costs of administration including a reasonable attorney's fee for the representation of the debtor.

"(c) Wages due to workmen, clerks, traveling or city salesmen or servants, which have been earned within three months before the date of the commencement of the proceedings not to exceed six hundred dollars to each claimant.

"(d) Taxes, assessments, and debts due the United States or this state, or any county, district or municipality.

"(e) Other debts entitled to priority.

"(f) Debts due to creditors generally in proportion to the amount of their claims as allowed.

"(g) After payment of the foregoing the surplus, if any, shall be returned to the debtor.

"(2) Debts to become due as well as debts due may be proved, but a lessor's claim shall be limited to past due rent, and to any actual damage caused him by a rejection of the lease on the part of the debtor or by its termination by force of its provisions. The lessor shall be entitled to payment in full, at the rate specified in the lease, for the period of any actual occupancy by the receiver or assignee.

"(3) The receiver or assignee may pay or the court may order a dividend to be paid at any time, making such provision as shall be necessary for the protection of claims in dispute.

"(4) The receiver or assignee shall as soon as practicable, report to the court the amount due the employes of the debtor and the court shall order him to pay out promptly, if practicable, such wage claims as have priority under this chapter.

"128.18 Liens. (1) Claims which for want of record or for other rea-sons would not have been valid liens as against creditors of the debtor armed with process, pursuant to which such property has been attached or levied upon, shall not be liens against the estate.

"(2) Whenever a creditor is prevented from enforcing his rights as against a lien created or attempted to be created by his debtor the receiver or assignee shall be subrogated to and may enforce such rights of such creditors for the benefit of the estate.

"(3) A lien created by, or obtained in or pursuant to any action which was begun against, a person within four months before the commencement of proceedings for the appointment of a receiver herein, or the filing of an assignment hereunder, shall be dissolved by the appointment of a receiver or the qualification of the assignee, and the receiver or assignee shall be subrogated to the rights of the holder of such lien for the benefit of all creditors, if:

"(a) It appears that said lien was obtained and permitted while the debtor was insolvent, and that its existence or enforcement will work a preference, or

"(c) That such lien was sought and permitted in fraud of the provisions of this chapter.

"(4) Liens given or accepted in good faith and for a present consideration which have been properly recorded or filed shall, to the extent of such present consideration only, not be affected by the provisions of this chapter.

"(5) That all conveyances, transfers, assignments or incumbrances of his property, or any part thereof, made or given by a debtor within four months prior to the filing of a petition or assignment hereunder with the intent and purpose on his part to hinder, delay or defraud his creditors, or any of them, shall be

null and void as against the creditors of such debtor except as to purchasers in good faith and for a present fair consideration; and all property of the debtor conveyed, transferred, assigned or incumbered as aforesaid shall, if the same be not exempt from execution, be and remain a part of the assets and estate of the debtor and shall pass to his receiver or assignee, whose duty it shall be to recover and retain the same for the benefit of the creditors; and all conveyances, transfers or incumbrances of his property made by a debtor at any time within four months prior to the filing of a petition or assignment hereunder, and while insolvent, which are null and void as against creditors by the laws of this state, shall pass to the receiver or assignee and be by him recovered for the benefit of the creditors.

"(6) That all levies, judgments, attachments or other liens obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of a petition or assignment hereunder, shall be deemed null and void in case a receiver is appointed or an assignee qualifies hereunder, and the property affected by the levy, judgment, attachment or other lien shall be deemed wholly discharged and released from the same, and shall pass to the receiver or assignee as a part of the estate of the debtor unless the court shall on due notice, order that the right under such levy, judgment, attachment or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the receiver or assignee for the benefit of the estate.

"128.19 Title to property. (1) The receiver or assignee upon his qualification shall be vested by operation of law with the title of the debtor as of the date of the filing of the petition or assignment hereunder, except so far as it is property which is exempt, including

"(a) Property transferred by him in fraud of his creditors.

"(b) Property which prior to the filing of the petition or assignment he could by any means have transferred or which might have been levied upon and sold under judicial process against him.

"(c) Rights of action arising upon contracts or from the unlawful taking or detention of or injury to his property.

"(2) The receiver or assignee may avoid any transfer by the debtor of his property which any creditor might have avoided and may recover the property so transferred or its value from the person to whom it was transferred unless he was a bona fide holder for value prior to the filing of the petition or assignment hereunder.

"128.20 Settlement of receiver's or assignee's accounts. (1) Every receiver or assignee shall within six months after the time limited for filing claims or within such further time as the court shall allow, file with the clerk of the court, a full and itemized statement verified by his oath of the property by him received, the manner of his dealing therewith, the amount of money realized by him, the condition of the property and funds in his possession, the names and residences of the debtor's creditors, the dividends paid them, his receipts and disbursements with his claim for compensation and administration expenses. If any receiver or assignee shall neglect to apply promptly for a settlement of his account, the court may, upon application of any creditor, compel the making and filing of such account or settlement thereof and in such case the receiver or assignee may be denied compensation.

"(2) Upon filing such report the receiver or assignee may apply to

458

the court upon not less than ten days' notice thereof by mail to the respective creditors named therein, for a final settlement of such account, and the court shall fix a time and place for the hearing of objections or taking of evidence and by order settle and adjust such accounts and the compensation and expenses of such receiver or assignee whether objection be made or not and such order shall be conclusive upon all parties including the sureties of the receiver or assignee, but the receiver or assignee or any creditor may appeal from such order within thirty days from the entry thereof in the manner prescribed for appeals in civil actions except that the receiver or assignee may file his notice and undertaking with the clerk without other service thereof. The receiver or assignee shall be discharged of his trust and his bond canceled upon compliance with the final order of the court."