In the Matter of **SUPREME TOOL AND MANUFACTURING COMPANY, a Wisconsin Corporation, Alleged Bankrupt.**

No. 56–B–52.

United States District Court
E. D. Wisconsin.
Oct. 4, 1956.

Harry Primakow, Milwaukee, Wis., for Company.

Daniel W. Howard, Milwaukee, Wis., for receiver.

Duane Stellmacher, Madison, Wis., for Wisconsin Dept. of Taxation.

W. H. Putnam, Madison, Wis., for Industrial Commission, Unemployment Compensation Dept.

Walter Mattison, City Atty., Milwaukee, Wis., for City of Milwaukee.

Howard Hilgendorf, Milwaukee, Wis., for District Director of Int. Revenue.

TEHAN, Chief Judge.

The alleged bankrupt, Supreme Tool & Manufacturing Company, has moved to dismiss the creditors' involuntary petition in bankruptcy upon the ground that there was no act of bankruptcy within the four-month period and therefore this court lacks the necessary jurisdiction. On February 15, 1954, pursuant to Chapter 128, Wisconsin Statutes, and prior to the filing of this petition, the alleged bankrupt duly executed a voluntary assignment for the benefit of creditors, which was immediately accepted by Albert C. Heller, the designated assignee. On the following day the assignment was filed with the clerk of the Circuit Court of Milwaukee County, whereupon Judge William F. Shaughnessy of that court appointed Heller receiver. Subsequently, the receiver reduced the assets of the alleged bankrupt to cash, which he now holds.

On January 20, 1956, an involuntary petition in bankruptcy was filed with this court by the City of Milwaukee, the State of Wisconsin Industrial Commission and the Wisconsin Department of Taxation. On February 3, 1956, both the receiver and the alleged bankrupt filed motions to dismiss the petition on the grounds that no act of bankruptcy within the four-month period was alleged, and that the federal district court therefore lacks jurisdiction.

Petitioning creditors, prior to filing their involuntary petition in bankruptcy here, filed their claims in the state court and apparently at all times participated fully in the proceedings there. Two hearings were held in the state court proceedings in January and February, 1956, before Judge Michael T. Sullivan of the Circuit Court of Milwaukee County. In an order dated March 2, 1956, he found that the state court was without jurisdiction *"in this matter at this time"* (emphasis ours), and ordered that the record upon request of the federal clerk "be transmitted by the Clerk of the Circuit Court to the Clerk of the United States District Court for the Eastern District of Wisconsin."

We have no doubt that petitioning creditors' present action before this court was prompted by the decision of this court in In re Wisconsin Builders Supply Co., E.D.Wis., 1955, 136 F.Supp. 439. There we declared suspended the state insolvency law, Chapter 128 of the Wisconsin Statutes, as being in conflict with the operation of the Federal Bankruptcy Act. But in the Wisconsin Builders Supply Co. case, we were not confronted with any jurisdictional problem, whereas here at the very outset, we are precisely faced

with the issue of this court's power to decide this case.

Congress has provided for and clearly defined the particular bounds of our jurisdiction. The portions of the Bankruptcy Act applicable to the jurisdictional problem raised by the motions to dismiss are these:

11 U.S.C.A. § 11, sub. a:

"The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby invested, within their respective territorial limits as now established or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this title, in vacation, in chambers, and during their respective terms, as they are now or may be hereafter held, to— * * *."

11 U.S.C.A. § 11, sub. a(21):

"Require receivers or trustees appointed in proceedings not under this title, assignees for the benefit of creditors, and agents authorized to take possession of or to liquidate a person's property to deliver the property in their possession or under their control to the receiver or trustee appointed under this title or, where an arrangement or a plan under this title has been confirmed and such property has not prior thereto been delivered to a receiver or trustee appointed under this title, to deliver such property to the debtor or other person entitled to such property according to the provisions of the arrangement or plan, and in all such cases to account to the court for the disposition by them of the property of such bankrupt or debtor: *Provided, however,* That such delivery and accounting shall not be required, except in proceedings under section 205 and chapters 10 and 12 of this title, *if the receiver or trustee was appointed, the assignment was made, or the agent was authorized more than four months prior to the date of bankruptcy.* Upon such accounting, the court shall reexamine and determine the propriety and reasonableness of all disbursements made out of such property by such receiver, trustee, assignee, or agent, either to himself or to others, for services and expenses under such receivership, trusteeship, assignment, or agency, and shall, unless such disbursements have been approved, upon notice to creditors and other parties in interest, by a court of competent jurisdiction prior to the proceeding under this title, surcharge such receiver, trustee, assignee, or agent the amount of any disbursement determined by the court to have been improper or excessive." (Emphasis ours.)

11 U.S.C.A. § 21, sub. a:

"Acts of bankruptcy by a person shall consist of his having (1) concealed, removed, or permitted to be concealed or removed any part of his property, with intent to hinder, delay, or defraud his creditors or any of them, or made or suffered a transfer of any of his property, fraudulent under the provisions of section 107 or 110 of this title; or (2) made or suffered a preferential transfer, as defined in subdivision a of section 96 of this title; or (3) suffered or permitted, while insolvent, any creditor to obtain a lien upon any of his property through legal proceedings or distraint and not having vacated or discharged such lien within thirty days from the date thereof or at least five days before the date set for any sale or other disposition of such property; or (4) *made a general assignment for the benefit of his creditors*; or (5) *while insolvent or unable to pay his debts as they mature, procured, permitted, or suffered voluntarily or involuntarily the appointment of a receiver or trustee to take charge of his property*; or (6) admitted in writing his inability to pay his debts and his

willingness to be adjudged a bankrupt." (Emphasis ours.)

11 U.S.C.A. § 21, sub. b:

"*A petition may be filed against a person within four months after the commission of an act of bankruptcy.* Such time with respect to the third act of bankruptcy shall expire four months after the date the lien through legal proceedings or distraint was obtained and, with respect to the first or *fourth act of bankruptcy, such time shall not expire until four months after the date when the transfer or assignment became so far perfected* that no bona fide purchaser from the debtor could thereafter have acquired any rights in the property so transferred or assigned superior to the rights of the transferee or assignee therein, and such time with respect to the second act of bankruptcy shall not expire until four months after the date when the transfer became perfected as prescribed in subdivision a of section 96 of this title. For the purposes of this section, it is sufficient if intent to hinder, delay or defraud under the first act of bankruptcy, where such intent is an element of such act, or if insolvency under the second act of bankruptcy, exists either at the time when the transfer was made or at the time when it became perfected, as hereinabove provided." (Emphasis ours.)

The plain language of these statutes is inescapable. The acts of bankruptcy alleged by the petitioning creditors in this case were (1) the alleged bankrupt's execution of a voluntary assignment for the benefit of creditors on February 15, 1954, and (2) the alleged bankrupt's suffering the state court appointment of a receiver to take charge of his property on February 16, 1954. Well over four months subsequent to these acts of bankruptcy, almost two years, the involuntary petition was filed with this court, that is, on January 20, 1956. Petitioners have therefore failed to file their petition within the requisite statutory period.

To invoke the jurisdiction of this court properly under the above statutes, an alleged act of bankruptcy must occur within the four months prior to the petition. Remington on Bankruptcy, Sec. 172, Page 264 (1950). Authority cited by petitioners are cases wherein the court presumes the existence of federal jurisdiction, and therefore they are not relevant here. For example, In re Weedman Stave Co., D.C.E.D.Ark.1912, 199 F. 948, is heavily relied on by petitioners. In that case, the court apparently presumed its jurisdiction, possibly on the basis of the fact that "the bankrupt admitted in writing its inability to pay its debts and its willingness to be adjudged a bankrupt" within the critical four months. Of course, once jurisdiction has been obtained, this court has the right to scrutinize the state law to determine whether it is inoperative because of conflict with a federal statute.

In In re Distillers Factors Corporation, D.C.N.J.1950, 91 F.Supp. 796, at page 798, the language written on a similar bankruptcy problem, supports our position on the question of jurisdiction:

"As here applied, it seems clear that the New Jersey Corporation Act operates in the field occupied by the Bankruptcy Act, International Shoe Co. v. Pinkus, 278 U.S. 261, 49 S.Ct. 108, 73 L.Ed. 318; First National Bank in Albuquerque v. Robinson, 10 Cir., 1939, 107 F.2d 50; In re Weedman Stave Co., D.C.Ark. 1912, 199 F. 948, and when properly invoked the jurisdiction of the Bankruptcy Court is of course paramount. In re Watts & Sachs, 190 U.S. 1, 27, 23 S.Ct. 718, 47 L.Ed. 933. However, it does not necessarily follow that the proceedings are superseded in a case where the four-month period has elapsed. By the enactment of § 2a(21) of the Bankruptcy Act, Congress has provided the manner in which supersession is to be accomplished. The proviso that de-

livery and accounting shall not be required if the receiver was appointed more than four months prior to the date when the petition was filed, carries with it certain indefectible implications. *While the State Corporation Act is in reality essentially a bankruptcy act, Congress has provided no means of implementing supersession after a four-month period. Hence it must be inferred that after lapse of such a period of time, Congress left this field of operation to the state courts. The situation is analogous to that which obtained in the intervals when no Federal Bankruptcy Act was in force, the State Insolvency Acts controlling.* In the circumstances here presented the court holds that the proceedings in the state court, under the New Jersey Corporation Act, are not superseded by these proceedings under Chapter XI of the Bankruptcy Act [11 U.S.C.A. § 701 et seq.]." (Emphasis ours.)

This decision was affirmed in 3 Cir., 1955, 187 F.2d 685, at page 687, certiorari denied 342 U.S. 824, 72 S.Ct. 45, 96 L.Ed. 623, where the Court of Appeals said:

"For this case, emphasis more properly rests on the early and consistent recognition that the basic impropriety to be avoided in state insolvency legislation is interference with the orderly administration of the constitutionally authorized uniform national bankruptcy laws. * * * Evaluation of such interference rests in large part on the scope Congress itself has indicated for the operation of its own bankruptcy legislation. The language of Section 2, sub. a(21) leaves little doubt that a non-bankruptcy receivership valid in its inception and of more than four months' duration, whatever its character, is to be tolerated where the federal relief sought is an arrangement."

■ To meet the jurisdictional prerequisite, petitioners urge that while the state receiver holds the money realized from the alleged bankrupt's property, the above recited acts of bankruptcy are *continuing* acts of bankruptcy. This novel and adroit tour de force of a "continuing act of bankruptcy" to prevent the four months' period from running, as a rule of law, lacks the vigor of any support in any case authorities presented by counsel or discovered by this court.

In passing, another question arises, which we do not need to answer. However, we doubt whether petitioners constitute *three* creditors within the meaning of 11 U.S.C.A. § 95, sub. b. We believe that the Department of Taxation and the Industrial Commission of Wisconsin are in truth only *one* creditor— the State of Wisconsin. So in reality, this petition has only *two* petitioners— the State of Wisconsin and the City of Milwaukee. It seems to fail likewise on this ground.

The motion to dismiss the involuntary petition in bankruptcy must be granted.