POBRESLO *v.* JOSEPH M. BOYD CO. ET AL.

No. 171. Argued December 13, 1932.—Decided January 9, 1933.

*Mr. C. G. Mathys*, with whom *Mr. R. M. Rieser* was on the brief, for appellant.

*Mr. Frank A. Ross,* with whom *Mr. William R. Bagley* was on the brief, for appellees.

*Messrs. John W. Reynolds,* Attorney General, and *Harold M. Wilkie,* by leave of Court, filed a brief on behalf of the State of Wisconsin, as *amicus curiae.*

MR. JUSTICE BUTLER delivered the opinion of the Court.

Chapter 128 of the Wisconsin Statutes, 1929, regulates and controls voluntary assignments for the benefit of creditors and also contains provisions relating to the discharge of insolvent debtors. By this appeal we are called on to decide whether as construed below the provisions of that chapter which relate to voluntary assignments for the benefit of creditors, and especially a clause contained in § 128.06, conflict with the National Bankruptcy Act. The clause declares: "No creditor shall, in any case where a debtor has made or attempted to make an assignment for the benefit of creditors, or in case of the insolvency of any debtor, by attachment, garnishment or otherwise, obtain priority over other creditors upon such assignment being

for any reason adjudged void, or in consequence of any sale, lien or security being adjudged void ".*

\* Section 128.06 follows.

"All voluntary assignments or transfers whatever . . . for the benefit of or in trust for creditors shall be void as against the creditors of the person making the same unless the assignee shall be a resident of this state and shall, before taking possession of the property assigned and before taking upon himself any trust conferred upon him by the instrument of assignment, deliver to the county judge or court commissioner of the county in which such assignor or some one of the assignors at the time of the execution of such assignment shall reside . . . a bond . . . in a sum not less than the present value of the assets of such assignor, . . . with two or more sufficient sureties . . .; and the bond shall be conditioned that such assignee shall faithfully discharge the several trusts reposed in him by such assignment and diligently and faithfully collect and reduce to money the property assigned to him and account for and pay over to the several parties, then being creditors of the assignor, all moneys that shall come into his hands from the effects of such assignor after deducting the necessary expenses of performing the several trusts mentioned in the assignment, as settled and allowed by the circuit court, and abide the order of said court. But no assignment shall be void because of any defect, informality or mistake therein or in the bond, inventory or list of creditors accompanying the same; and the court or judge may direct the amendment of the assignment or of any other such paper to effect the intention of the assignor or assignee, and any such amendment shall relate back to the time of the execution of the paper to which it is made. No mistake in filing a copy instead of an original or any like mistake or inadvertent failure to comply with the provisions of this chapter shall avoid the assignment. No creditor shall, in any case where a debtor has made or attempted to make an assignment for the benefit of creditors, or in case of the insolvency of any debtor, by attachment, garnishment or otherwise, obtain priority over other creditors upon such assignment being for any reason adjudged void, or in consequence of any sale, lien or security being adjudged void; but in all such cases the property of such insolvent debtor shall be administered for the ratable benefit of all his creditors under the direction of the court by the assignee or by any receiver of said property and estate appointed as hereinafter provided."

The Boyd Company, a Wisconsin corporation, March 23, 1931, made a voluntary assignment of all its property to assignees for the benefit of its creditors. They immediately took possession, and the circuit court of Dane county on the same day assumed jurisdiction declaring in its order that it did so pursuant to c. 128. Appellant, a non-assenting creditor, brought suit against the assignor and prayed judgment for more than $2,500. September 1, 1931, she instituted garnishment proceedings against the assignees, asserting that the assignment was void because of failure to comply with c. 128 in several particulars and because that chapter was repugnant to the Bankruptcy Act. Thereafter the assignor amended the assignment to authorize the judge of the circuit court, in case of resignation of the assignees, to appoint a trustee. The assignees resigned, and the court appointed appellee Samp as sole trustee. He answered the garnishment and admitted that he had the property conveyed by the assignment but denied that he had possession or control of any property in which the assignor had an interest. Appellant, having recovered judgment against the assignor for $2,645, moved for judgment against the garnishees. The court found that the assignees had received property belonging to the assignor in excess of appellant's judgment and had transferred the same to the trustee, and ordered that it be applied to satisfy the judgment. The supreme court reversed and directed that the garnishee action be dismissed. 210 Wis. 20; 242 N. W. 725.

In view of the construction theretofore put upon c. 128 by the state supreme court, it is evident that the assignment did not have the effect of instituting proceedings contemplating discharge of assignor from its debts.

In *Voluntary Assignment of Tarnowski* (1926), 191 Wis. 279; 210 N. W. 836, the supreme court declared that, as to all matters comprehended within the Bank-

ruptcy Act, the state insolvency laws had been by it completely superseded and said (p. 283): "The statutes of this state relating to the subject of bankruptcy are suspended during the existence of the federal Bankruptcy Act, and . . . such statutes afford the courts of this state no power or authority to discharge debtors from their debts." In *Hazelwood* v. *Olinger Building Department Stores* (1931), 205 Wis. 85; 236 N. W. 591, the court pointed out that the Wisconsin statute under consideration is essentially different from the Arkansas statute before us in *International Shoe Co.* v. *Pinkus*, 278 U. S. 261, and, speaking through Chief Justice Rosenberry, said (p. 88): "In the matter of *Voluntary Assignment of Tarnowski* . . . it was held that the right to make a voluntary assignment for the benefit of creditors is a personal right inherent in the ownership of property, and existed at common law independent of the statute; that, while the discharge of a bankrupt from his debts constitutes the very essence of the Bankruptcy Law, the discharge of a debtor is no part of an assignment law; that part of the chapter relating to discharge is entirely superseded by the federal act, and has, under present conditions, no efficacy; and, further, that a creditor filing his claim and accepting his pro rata share of the proceeds under a voluntary assignment does not waive his right to object to the debtor's discharge. As a condition of filing a claim under the Arkansas statute, the creditor was required to agree that payment of a pro rata share of the assets of the insolvent's estate should discharge his claim. It is hardly necessary to point out the wide difference between the statute of Arkansas and that of Wisconsin as construed by this court." In the case at bar the court again declared that the provisions in c. 128 that apply to such voluntary assignments are severable from those that relate to the discharge of insolvent debtors. It reiterated that the federal

Act superseded the latter. And it held that, as there was an attempt to make an assignment for the benefit of creditors, the quoted clause of § 128.06 prevented garnishment, even though the assignees had failed to follow some of the procedural details prescribed by c. 128.

There is slight need to refer more specifically to the differences between this case and *International Shoe Co.* v. *Pinkus, supra.* There the proceedings in the chancery court were under the state insolvency law (Crawford & Moses' Dig., §§ 5885–5893) and not under the law governing voluntary assignments for the benefit of creditors. *Id.,* §§ 486–493. Upon the entry of the shoe company's judgment against him, Pinkus sought discharge from his debts under the insolvency law and to that end procured the entry of a decree under which his creditors were prohibited from having any payment out of his property except upon stipulation for his full release. As shown by our decision in that case, the Arkansas insolvency law not only related to the subject of bankruptcies but actually dealt with essential features of that subject which are covered by the Act now in force. It not only governed discharge of the bankrupt debtor but imposed conditions which trammeled and made against equal distribution of his property.

In the case now before us the Wisconsin statutory provisions relating to discharge of insolvent debtors were not invoked. There is nothing in the assignment, the application to the circuit court to take jurisdiction, or its order thereon, to suggest that the discharge of the assignor was contemplated. The provisions regulating the administration of trusts created by voluntary assignments for the benefit of creditors apply whether the assignor is solvent or insolvent. They do not prevent creditors from bringing action against the debtor or require those seeking to participate in the distribution of the estate to stipu-

late for his discharge. And, quite in harmony with the purposes of the federal Act, the provisions of c. 128 that are regulatory of such voluntary assignments serve to protect creditors against each other and go to assure equality of distribution unaffected by any requirement or condition in respect of discharge.

A proceeding under the Arkansas law derives its force solely from legislation that involves a judicial winding up of an insolvent estate and the discharge of the debtor. Such a law is within the field of the federal Act. Indeed, the declaration: " Proceedings commenced under State insolvency laws before the passage of this Act shall not be affected by it " (30 Stat. 566) suggests that Congress intended to supersede these local enactments. See *In re Sievers,* 91 Fed. 366. *Star* v. *Johnson* (Tex. Civ. App.), 44 S. W. (2d) 429. On the other hand the Wisconsin law merely governs the administration of trusts created by deeds like that in question, which do not differ substantially from those arising under common law assignments for the benefit of creditors. The substantive rights under such assignments depend upon contract; the legislation merely governs the execution of the trusts on which the property is conveyed. And as proceedings under any such assignment may be terminated upon petition of creditors filed within the time and in the manner prescribed by the federal Act (*West Company* v. *Lea,* 174 U. S. 590), it is apparent that Congress intended that such voluntary assignments, unless so put aside, should be regarded as not inconsistent with the purposes of the federal Act. *Mayer* v. *Hellman,* 91 U. S. 496, 501. *Boese* v. *King,* 108 U. S. 379, 385–387. *Stellwagen* v. *Clum,* 245 U. S. 605, 615. *Straton* v. *New,* 283 U. S. 318, 327. It follows that the above quoted provision of § 128.06 is valid and effective to prevent garnishment of funds in the hands of the trustee.

*Judgment affirmed.*