239 F.2d 649
 In the Matter of WISCONSIN BUILDERS SUPPLY CO., Bankrupt.
Paul L. MOSKOWITZ, Receiver of Wisconsin Builders Supply Co., Appellant,
v.
George D. PRENTICE, Jr., Trustee of Wisconsin Builders Supply Co., Appellee.
 No. 11706.
 United States Court of Appeals Seventh Circuit.
 November 27, 1956.
 Rehearing Denied February 4, 1957.
 
 Arthur Magidson, Emil Hersh, Milwaukee, Wis., Frank K. Levin, Frederick Hersh, Alvin R. Meyer, Milwaukee, Wis., of counsel, for appellant.
 Robert D. Jones, Milwaukee, Wis., Patrick T. Sheedy, Milwaukee, Wis., of counsel, for appellee.
 Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.
 SWAIM, Circuit Judge.
 
 
 1
 Chapter 128 of the Wisconsin Statutes (1951), regulates general assignments for the benefit of creditors and also contains provisions relating to involuntary proceedings against insolvent debtors. This appeal raises the question of whether the voluntary provisions of that chapter which relate to general assignments conflict with the National Bankruptcy Act, 11 U.S.C.A. § 1 et seq., and are therefore suspended while the federal law is operative.
 
 
 2
 On October 26, 1951, the Wisconsin Builders Supply Co. executed a general assignment for the benefit of its creditors to Paul L. Moskowitz, as assignee. The assignment was filed, pursuant to Chapter 128, in the Circuit Court for Milwaukee County on October 29, 1951, and Moskowitz was duly appointed receiver for the debtor and its assets. On June 6, 1952, the debtor filed a voluntary petition in the United States District Court for the Eastern District of Wisconsin praying that it be adjudged a bankrupt. An order of adjudication was duly entered on the same date. On July 14, 1952, the trustee in bankruptcy filed a petition with the referee requesting a turn over order to require Moskowitz, as state court receiver, to turn over all the assets of the bankrupt to the trustee in bankruptcy. At the hearing before the referee the receiver filed a special appearance on the ground that the District Court did not have jurisdiction. The referee found that Chapter 128 of the Wisconsin Statutes established a system of liquidation which possessed all of the characteristics of a bankruptcy law and therefore was in conflict with the National Bankruptcy Act; that the appointment of the receiver under this statute was void; and that the turn over order should issue. The District Court affirmed the order of the referee. In re Wisconsin Builders Supply Co., 136 F. Supp. 439.
 
 
 3
 The Constitution of the United States gives Congress the power "to establish * * * uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Constitution, Art. I, § 8, cl. 4. This clause did not obligate Congress to pass a federal bankruptcy law and during nearly two-thirds of the life of this nation we had no such act. Nor did this clause of the Constitution deny the power of the states to pass bankruptcy or insolvency laws. Sturges v. Crowninshield, 4 Wheat. 122, 4 L.Ed. 529. However, when Congress has exercised its constitutional power by enacting bankruptcy legislation the power of Congress is paramount and state laws in competition with the subject matter covered by Congress are superseded. Sturges v. Crowninshield, supra; Ogden v. Saunders, 12 Wheat. 213, 6 L.Ed. 606; Straton v. New, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060. The problem of permissible state legislation in respect to general assignments, such as we have before us, is admittedly difficult and requires a consideration of the scope of the Bankruptcy Act and of Chapter 128 of the Wisconsin Statutes.
 
 
 4
 Section 3 of the Bankruptcy Act, 11 U.S.C.A. § 21, sub. a(4), makes a general assignment for the benefit of creditors an act of bankruptcy. It is clear that general assignments may be regulated by state statutes and supervised by state courts either exercising powers specifically conferred by statute or their traditional equity powers. Pobreslo v. Joseph M. Boyd Co., 287 U.S. 518, 53 S.Ct. 262, 77 L.Ed. 469; Johnson v. Star, 287 U.S. 527, 53 S.Ct. 265, 77 L.Ed. 473; Boese v. King, 108 U.S. 379, 2 S. Ct. 765, 27 L.Ed. 760; Mayer v. Hellman, 91 U.S. 496, 23 L.Ed. 377. Of course, it is possible that state legislation may go so far as to change the general assignment into a state insolvency system in conflict with or covering the same subject matter as the Bankruptcy Act and where that occurs such legislation is held to be superseded by the paramount federal law. See International Shoe Co. v. Pinkus, 278 U.S. 261, 49 S.Ct. 108, 73 L. Ed. 318, where the Supreme Court held such an Arkansas statute suspended.
 
 
 5
 The legislation before us, Wis.Stat. c. 128 (1951), became law in 1937 when the previous Chapter 128, Wis.Stat. c. 128 (1935), was repealed. Wis.Laws 1937, c. 431, § 1. In Re Voluntary Assignment of Tarnowski, 191 Wis. 279, 210 N.W. 836, 49 A.L.R. 686, the Wisconsin Supreme Court upheld the validity of the earlier act, although it declared a discharge provision susperseded by the Bankruptcy Act. The same statute was again considered by the Wisconsin court in Pobreslo v. Joseph M. Boyd Co., 210 Wis. 20, 242 N.W. 725; see also Hazelwood v. Olinger Building Department Stores, 205 Wis. 85, 236 N.W. 591; and the court affirmed its position that the provisions of Chapter 128 were not in conflict with the federal act. This finding was upheld by the United States Supreme Court in Pobreslo v. Joseph M. Boyd Co., 287 U.S. 518, 53 S.Ct. 262, 77 L.Ed. 469. The receiver urges that the present Chapter 128 is substantially a re-enactment of the provisions of the earlier act with the exception of the involuntary provisions and, since the previous law was upheld in the Pobreslo case, the present law is equally valid.
 
 
 6
 Before considering the provisions of Chapter 128 we shall first consider the argument of the receiver that since Chapter 128 does not contain a discharge provision it lacks one of the essential features of bankruptcy legislation. While much language in the cases indicates that a discharge provision is suspended and that great importance should be attached to this element in deciding whether state legislation is suspended, e. g., Pobreslo v. Boyd Co., 287 U.S. 518, 525-526, 53 S.Ct. 262, 77 L.Ed. 469; International Shoe Co. v. Pinkus, 278 U.S. 261, 265-266, 49 S.Ct. 108, 73 L.Ed. 318; Stellwagen v. Clum, 245 U.S. 605, 615-616, 38 S.Ct. 215, 62 L.Ed. 507; Boese v. King, 108 U.S. 379, 385, 2 S.Ct. 765, 27 L.Ed. 760, it is clear that the presence or absence of such a provision is not the sole test to be applied in this determination. See Stellwagen v. Clum, 245 U.S. at page 616, 38 S.Ct. at page 218. The lower federal courts have frequently held that discharge is not an essential element of bankruptcy law and that state legislation may be suspended notwithstanding the absence of such a provision. First Nat. Bank in Albuquerque v. Robinson, 10 Cir., 107 F.2d 50; Hammond v. Lyon Realty Co., 4 Cir., 59 F.2d 592; In re Schwartz Bros., D.C., 58 F.Supp. 761; In re Weedman Stave Co., D.C., 199 F. 948; In re Salmon & Salmon, D.C., 143 F. 395; In re F. A. Hall Co., D.C., 121 F. 992; In re Smith, D.C., 92 F. 135. Some of the emphasis on discharge as the criterion of a bankruptcy act is misguided. Historically, discharge has not been an inherent characteristic of bankruptcy legislation in the United States. In fact the present Federal Bankruptcy Act is the first to permit discharge without some consent of the creditors of the insolvent. Further, as regards a corporate debtor such as we have here, discharge is frequently of no importance when it is noted that a general assignment or the appointment of a receiver is often a prelude to dissolution of the corporate entity.
 
 
 7
 If, as it appears, the presence or absence of a discharge provision is not the sole criterion of the invalidity or validity, respectively, of state legislation in the field presently covered by federal law, it is necessary to determine the element or elements which do control such a determination. In International Shoe Co. v. Pinkus, 278 U.S. 261, at page 265, 49 S.Ct. 108, at page 110, Mr. Justice Butler, speaking for a majority of the Court, said:
 
 
 8
 "The national purpose to establish uniformity necessarily excludes state regulation. It is apparent, without comparison in detail of the provisions of the Bankruptcy Act with those of the Arkansas statute, that intolerable inconsistencies and confusion would result if that insolvency law be given effect while the national act is in force. Congress did not intend to give insolvent debtors seeking discharge, or their creditors seeking to collect claims, choice between the relief provided by the Bankruptcy Act and that specified in state insolvency laws. States may not pass or enforce laws to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations."
 
 
 9
 This rather sweeping language does not mean that the Bankruptcy Act prevents a state from legislating with regard to the debtor-creditor relationship. In subsequent cases the Supreme Court, speaking through Mr. Justice Butler, held that state statutes regulating general assignments were not in conflict with the Bankruptcy Act. Pobreslo v. Joseph M. Boyd Co., 287 U.S. 518, 53 S.Ct. 262, 77 L.Ed. 469, involving Wisconsin law, Wis.Stat. c. 128 (1929); Johnson v. Star, 287 U.S. 527, 53 S.Ct. 265, 77 L.Ed. 473, involving Texas law, Tex.Rev.Civil Stat. tit. 12 (1925), Vernon's Ann.Civ.St. arts. 261-274; and see the earlier cases, Stellwagen v. Clum, 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507; Boese v. King, 108 U.S. 379, 2 S.Ct. 765, 27 L.Ed. 760; Mayer v. Hellman, 91 U.S. 496, 23 L.Ed. 377. The making of a general assignment for the benefit of creditors and the procuring, permitting or voluntarily suffering the appointment of a receiver or trustee to take charge of debtor's property are acts of bankruptcy, 11 U.S.C.A. § 21(a) (4) and (5), which permit a requisite number of creditors to transfer the administration of the debtor's assets to the bankruptcy court, provided the action is timely and certain other requirements are met. This implies a recognition of possible alternatives to bankruptcy and that the creditors have a choice of administration, i. e., either the assignee or receiver selected by the debtor or one selected and supervised under the provisions of the Bankruptcy Act. The question is not whether states may legislate at all, but rather how far may they go.
 
 
 10
 The Wisconsin Act — Wis.Stat. c. 128 (1951)
 
 
 11
 Section 128.01 provides that all assignments for the benefit of creditors shall be subject to the provisions of Chapter 128, and that the circuit courts shall have supervision of the proceedings under this chapter and may make all necessary orders and judgments therefor. The Supreme Court has expressly held that general assignments may be regulated by state statutes and supervised by state courts exercising powers specifically conferred by statute. Pobreslo v. Joseph M. Boyd Co., 287 U.S. 518, 53 S. Ct. 262, 77 L.Ed. 469; Johnson v. Star, 287 U.S. 527, 53 S.Ct. 265, 77 L.Ed. 473; Mayer v. Hellman, 91 U.S. 496, 23 L.Ed. 377.
 
 
 12
 Section 128.02(1) provides that the assignee shall file the assignment in the appropriate court and deliver a bond to cover all property likely to come into his hands. Subsection (2) deprives all creditors of all remedies except as provided by Chapter 128 and provides a ratable distribution to the creditors. Section 128.06 of the prior Chapter 128, upheld in Pobreslo v. Joseph M. Boyd Co., supra, provided that voluntary assignments were void as against creditors unless the assignee filed the proceedings in court and gave bond. That section contained language almost identical to Section 128.02(2) of the present Wisconsin Act. See Mayer v. Hellman, 91 U.S. 496, 23 L.Ed. 377.
 
 
 13
 Section 128.05(1) makes it mandatory that the assignee shall file the assignment with the court; that the circuit court shall, upon the filing of the assignment, designate a receiver, or order a meeting of creditors for the purpose of electing a receiver who apparently need not be the assignee of the debtor, although in the instant case the assignee was appointed receiver.
 
 
 14
 Section 128.06 of the prior act provided, in part, that a voluntary assignment was void as against creditors unless filed with the court. There was no comparable provision requiring the court to designate a receiver or permitting the court to order a meeting of creditors for the purpose of electing a receiver.
 
 
 15
 Section 128.06(1) provides for the commencement of involuntary proceedings against an insolvent who within the preceding four months has committed one of five enumerated acts, which acts are five of the six acts of bankruptcy defined in the Bankruptcy Act, 11 U.S. C.A. § 21, i. e., (1) fraudulent transfer or concealment of property; (2) preferential transfer; (3) suffering or permitting any creditor to obtain a lien through legal proceedings; (4) fraudulent or collusive assignment for the benefit of his creditors; (5) admission in writing of his inability to pay debts and his willingness to be adjudged insolvent. Subsections (2) and (3) provide for hearings on the petition. Subsection (4) provides that the assignee under a voluntary assignment not previously filed under the provisions of Chapter 128 shall upon petition of any creditor, without proof of the insolvency of the assignor, be required to file the assignment and comply with the provisions of Chapter 128.
 
 
 16
 Section 128.08 of the prior act provided that if an insolvent debtor should confess judgment or do any act or make any conveyance whereby one or more of his creditors should obtain a preference or should fail to prevent a preference or if he should not, within ten days after any levy by attachment, execution or garnishment, make an assignment of all his property, or within such time in good faith institute proceedings to vacate the attachment, execution or garnishment, or secure a release thereof, any two or more creditors holding and owning debts of not less than $200 may make a petition to the circuit court, and the court shall then proceed summarily upon such petition and if it shall appear that the debtor is insolvent and has given a preference the court shall appoint a receiver who shall take possession of the debtor's property, convert the same into money and distribute it pro rata among the creditors.
 
 
 17
 The new section is much broader in scope than the old section and is as broad and comprehensive as Section 3 of the Bankruptcy Act, 11 U.S.C.A. § 21. There is no doubt that Section 128.06 is suspended because it is in conflict with the subject matter covered by the federal law. Straton v. New, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060; International Shoe Co. v. Pinkus, 278 U.S. 261, 49 S. Ct. 108, 73 L.Ed. 318; First Nat. Bank in Albuquerque v. Robinson, 10 Cir., 107 F.2d 50.
 
 
 18
 Section 128.08(1) gives the court power to sequestrate the property of a debtor and appoint a receiver therefor when a petition under Section 128.06 shall be filed and when an execution against a domestic corporation is returned unsatisfied in whole or in part and subsection (2) provides that in either of such cases the court may appoint a custodian to take possession and may provide for a meeting of creditors to elect a receiver. In so far as Section 128.08 is interrelated with Section 128.06 it is subject to the same objection as this latter section.
 
 
 19
 Section 128.10(1) provides that the court may afford opportunity for hearings and meetings of creditors to elect a receiver or to pass upon matters submitted to creditors by a majority vote in number and amount of claims. The prior act had no provision for creditors' meetings.
 
 
 20
 Section 128.12(1) provides that proceedings once commenced may not be dismissed by consent of parties, except after notice to all creditors and a hearing thereon. Subsection (2) provides that if proceedings are commenced and not diligently prosecuted or are delayed, any creditor may intervene for the purpose of continuing the administration or obtaining a dismissal. The prior act does not contain anything comparable to subsection (1). However, in the absence of statute, an assignment for the benefit of creditors is an absolute appropriation of the assignor's assets for their benefit and he surrenders all right and control over the property subject to the assignment. See 6 C.J.S., Assignments for Benefit of Creditors, § 1. Therefore, this provision of the act is not objectionable.
 
 
 21
 Section 128.05 of the prior act provided that if an assignee should neglect for thirty days to institute a suit to vacate a fraudulent or preferential conveyance, any creditor might institute such suit in the name of the assignee upon complying with certain conditions.
 
 
 22
 Section 128.18(1) provides that claims which for want of record or for other reasons would not have been valid liens as against creditors of the debtor armed with process shall not be liens against the estate; subsection (2) subrogates the receiver or assignee to the rights of creditors against the liens created by the debtor for the benefit of the estate; subsection (3) dissolves liens created within four months before the commencement of the proceedings if the lien is preferential or created by fraud; subsection (4) protects liens given in good faith and for present consideration; subsection (5) avoids transfers and liens created within four months prior to the filing of a petition or assignment with intent to hinder, delay or defraud creditors and provides that they shall be null and void against the creditors; and subsection (6) dissolves levies, judgments and attachments or other liens obtained through legal proceedings against an insolvent debtor within four months.
 
 
 23
 Section 128.02 of the prior act provided that every levy of an execution under a judgment obtained within sixty days prior to an assignment and the lien of such judgment on real estate shall be void, and that every lien created by the debtor within sixty days prior to the making of an assignment shall be void if the person benefited had reasonable cause to believe the debtor was insolvent. Section 128.03 gave the assignee the power necessary to institute any action or proceeding to avoid and set aside any such levy, sale or lien. Section 128.04 provided that the assignee shall represent the creditors, and the right to avoid any transfer or conveyance which would be fraudulent or void as to creditors was vested in the assignee. Section 128.07 provided for dissolution of attachments, levies, garnishments or other process made within ten days prior to an assignment or receivership.
 
 
 24
 Section 128.19(1) provides that the receiver or assignee upon qualification shall be vested by operation of law with title of the debtor as of the date of the filing of a petition or assignment except in so far as it is property which is exempt. Subsection (2) provides that the receiver or assignee may avoid any transfer by the debtor of his property which any creditor might have avoided and recover the property or its value from the transferee unless he was a bona fide purchaser prior to the filing of a petition or assignment. Section 128.08 of the prior act provided that upon appointment the receiver shall take possession of all the debtor's property attached, levied upon and conveyed in fraud of creditors, and have charge and control of same and convert same into money and distribute the same pro rata among the creditors. In case of a voluntary assignment title to the debtor's property was vested in the assignee by virtue of the contract of assignment. See 6 C.J.S. Assignments for Benefit of Creditors, § 10. Section 128.04 gave the assignee the right to avoid fraudulent conveyances and transfers.
 
 
 25
 Those sections of Chapter 128 which have not been compared in detail with the prior act are either substantially identical in purport with their predecessors or present differences which we do not believe significant with respect to the problem presented by this case.
 
 
 26
 A comparison of the provisions of Chapter 128 with those of the prior act compels a conclusion that Chapter 128, except for the involuntary provisions, is substantially a re-enactment of the earlier law. We fail to find any significant departures which would cause Chapter 128 to be legislation "tantamount to bankruptcy." There is little that is new. The character and purpose of the Act is the same, i. e., judicial supervision of general assignments for the benefit of creditors. The powers and procedures have been altered somewhat, but not in any significant respect, e.g., Section 128.05 permits the court to designate a receiver who need not be the assignee under the assignment; Section 128.10 permits the court to provide for hearings and meetings of creditors to elect a receiver or to pass upon matters submitted to creditors; Section 128.12 provides that proceedings once commenced may be dismissed only after a hearing on notice to all creditors; Section 128.15 provides that secured creditors may participate in the proceedings and file claims for such amount as their claims exceed the value of their security; Section 128.19 "legislates" title out of the debtor and into the receiver or assignee; Section 128.04 redefines insolvency and Section 128.17 establishes a new order of distribution — both sections employing language similar to that in the Bankruptcy Act. These changes are consistent with a regulatory scheme of general assignments and their purpose would appear to be to afford the mechanics for more efficient collection, administration and distribution of the debtor's assets. See Mayer v. Hellman, 91 U.S. 496, 500-501, 23 L.Ed. 377; Rieselbach, Sequestration for the Benefit of Creditors, 23 Marq.L. Rev. 59 (1939). Chapter 128 is an expansion of the prior Wisconsin general assignment legislation but it has not been turned into a system of insolvency administration opposed to the Bankruptcy Act, at least, as concerns its voluntary provisions. This was impliedly recognized by the District Court when it said:
 
 
 27
 "All of these sections of Chapter 128 which were created by Chapter 431 of the Laws of 1937 constitute with the 1939 amendments a comprehensive system covering both voluntary and involuntary actions. The provisions generally apply to both voluntary and involuntary actions and the Act does not lend itself to the application of the doctrine of severability. * * * To take out of the Act all of its involuntary phases would result in legislation having little resemblance to that passed by the legislature." In re Wisconsin Builders Supply Co., 136 F.Supp. 439, 451.
 
 
 28
 Having decided that the voluntary provisions of Chapter 128 are not objectionable, it becomes necessary to consider the contention of the receiver that the involuntary provisions may be severed from the Act. The District Court was of the opinion that the Act does not lend itself to the application of the doctrine of severability. It is true, as noted by the District Court, that a proceeding which commences as a voluntary one may be turned, in effect, into an involuntary proceeding as where the assignment is not filed, Section 128.06 (4), or where the action is not prosecuted diligently, Section 128.12(2). However, under the prior act voluntary assignments were void as against creditors unless the assignee filed the proceedings in court, Section 128.06, and, as noted above, in the absence of statute, an assignment for the benefit of creditors is an absolute appropriation of the assignor's assets for their benefit and the debtor surrenders all right and control over the property subject to the assignment. Whether the involuntary provisions are so interwoven with the regulatory scheme of Chapter 128 that they cannot be severed without destroying the efficacy of the remaining portions of the Act is a question of interpretation and legislative intent. This determination is more appropriately one for the state courts of Wisconsin. Skinner v. State of Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655. However, "[i]n cases coming from the lower federal courts, such questions of severability, if there is no controlling state decision, must be determined by this Court." Dorchy v. State of Kansas, 264 U.S. 286, 291, 44 S.Ct. 323, 325, 68 L.Ed. 686.
 
 
 29
 Chapter 128 contained a severability clause, Wis.Stat. § 128.22 (1937), but the Wisconsin legislature removed the separate severability clauses from their various places in the statutes and enacted a general severability clause to eliminate the necessity for such clauses in separate acts and sections. Wis.Laws 1951, c. 261, § 10. This clause provides the following rule of construction:
 
 
 30
 "Construction of laws; rules for. In construing Wisconsin laws the following rules shall be observed unless construction in accordance with a rule would produce a result inconsistent with the manifest intent of the legislature:
 
 
 31
 * * * * * *
 
 
 32
 "(11) Severability. The provisions of the statutes are severable. The provisions of any session law are severable. If any provision of the statutes or of a session law is invalid, or if the application of either to any person or circumstance is invalid, such invalidity shall not affect other provisions or applications which can be given effect without the invalid provision or application." Wis.Stat. c. 370, § 370.001 (1951).
 
 
 33
 Section 370.001(11) provides a rule of construction which may aid in this determination, "[b]ut it is an aid merely; not an inexorable command." Dorchy v. Kansas, 264 U.S. at page 290, 44 S.Ct. at pages 324, 325. And it does not appear necessary to ground our conclusion as to severability on Section 370.001(11). See Muench v. Public Service Comm., 261 Wis. 492, affirmed on rehearing at pp. 515b, 515p; 53 N.W.2d 514, affirmed on rehearing 55 N.W.2d 40, 47-48. We are of the opinion that the involuntary provisions of Chapter 128 may be severed; that this was the intent of the Wisconsin legislature; and that the remaining provisions of the Act can be given effect without the invalid provisions. No portion of the voluntary provisions is dependent upon the involuntary provisions, and they are distinct and separable from these latter provisions.
 
 
 34
 Only one last point need be considered. The receiver urges that a subsequent memorandum opinion by Judge Tehan, the judge below, in Matter of Supreme Tool and Manufacturing Co., D.C., 147 F.Supp. 158, is inconsistent with and, in effect, is a reversal of his decision in this case. In the Supreme Tool case the alleged bankrupt duly executed a voluntary assignment for the benefit of creditors pursuant to Chapter 128. The assignee accepted the assignment and complied with the provisions of Chapter 128. More than four months subsequent thereto, creditors of the alleged bankrupt filed an involuntary petition in bankruptcy with the District Court. The state court receiver and the alleged bankrupt filed motions to dismiss on the grounds that no act of bankruptcy within the four-month period was alleged and that, consequently, the District Court was without jurisdiction. The motions were granted. The case is clearly not in point.
 
 
 35
 In the instant case we have a nonbankruptcy receiver who was appointed more than four months before the filing of the voluntary petition. Section 2, sub. a (21) of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(21), expressly provides that the bankruptcy court shall not require delivery of assets which are in the hands of a state court receiver who was appointed more than four months prior to the date of bankruptcy.
 
 
 36
 The judgment is reversed and the cause remanded to the District Court with instructions to order the trustee in bankruptcy to return to the state court receiver all assets, if any, of the debtor, Wisconsin Builders Supply Co., in his possession or control.
 
 
 37
 Reversed and remanded.