[No. G035739. Fourth Dist., Div. Three. Oct. 4, 2006.]

CREDIT MANAGERS ASSOCIATION OF CALIFORNIA, Plaintiff and Appellant, v.
COUNTRYWIDE HOME LOANS, INC., Defendant and Respondent.

**COUNSEL**

Winthrop Couchot and William John Wall for Plaintiff and Appellant.

Sanford Shatz and Stephen T. Hicklin for Defendant and Respondent.

Glickfield, Fields & Jacobson and Lawrence M. Jacobson for CBS Radio Inc., as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**O'LEARY, J.**—In this case, we must decide whether the United States Bankruptcy Code preempts Code of Civil Procedure section 1800,[1] recovery of preferences. In *Sherwood Partners, Inc. v. Lycos, Inc.* (9th Cir. 2005) 394 F.3d 1198 (*Sherwood*), Judge Alex Kozinski of the Ninth Circuit Court of Appeals wrote for the majority and held the Bankruptcy Code preempted section 1800. In *Haberbush v. Charles & Dorothy Cummins Family Limited Partnership* (2006) 139 Cal.App.4th 1630, 1633 [43 Cal.Rptr.3d 814] (*Haberbush*), the Second District Court of Appeal, citing to Judge Dorothy Nelson's dissent in *Sherwood*, held it did not.

Credit Managers Association of California (CMAC) argues the trial court erroneously relied on *Sherwood*, which is nonbinding federal authority, to find the Bankruptcy Code preempts section 1800. Countrywide recognizes *Sherwood* is not binding on this court, but contends its reasoning is persuasive and we should rely on it to affirm the trial court's judgment. By "Supplemental Citation," CMAC suggests we rely on *Haberbush* to reverse the trial court's judgment. As we explain below, we find *Haberbush* persuasive and conclude the Bankruptcy Code does not preempt section 1800.

### FACTS

Where the facts are undisputed, and the propriety of the order sustaining the demurrer turns on an issue of federal preemption, we review the decision de novo. (*American Internat. Group, Inc. v. Superior Court* (1991) 234 Cal.App.3d 749, 755 [285 Cal.Rptr. 765].) Between September 23, 2003, and December 22, 2003, Instafi transferred approximately $267,051 to its creditor, Countrywide, while Instafi was insolvent. On or about December 22, 2003, Instafi executed an assignment for the benefit of its creditors to CMAC of all its assets pursuant to section 493.010.[2] There was no allegation Instafi filed for bankruptcy.

CMAC filed a complaint against Countrywide seeking to recover the transfers Instafi made to Countrywide citing section 1800. Countrywide demurred to the complaint on the grounds section 547 of title 11 of the United

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

[2] Section 493.010, the validity of which is not at issue in this appeal, states, "As used in this chapter, 'general assignment for the benefit of creditors' means an assignment which satisfies all of the following requirements: [¶] (a) The assignment is an assignment of all the defendant's assets that are transferable and not exempt from enforcement of a money judgment. [¶] (b) The assignment is for the benefit of all the defendant's creditors. [¶] (c) The assignment does not itself create a preference of one creditor or class of creditors over any other creditor or class of creditors, but the assignment may recognize the existence of preferences to which creditors are otherwise entitled."

States Code preempts section 1800. CMAC opposed the demurrer, and Countrywide responded. After hearing argument, the trial court sustained Countrywide's demurrer without leave to amend.

## DISCUSSION

Section 1800, subdivision (b), states: "Except as provided in subdivision (c), the assignee of any general assignment for the benefit of creditors (as defined in [s]ection 493.010) may recover any transfer of property of the assignor: [¶] (1) To or for the benefit of a creditor; [¶] (2) For or on account of an antecedent debt owed by the assignor before the transfer was made; [¶] (3) Made while the assignor was insolvent; [¶] (4) Made on or within 90 days before the date of the making of the assignment or made between 90 days and one year before the date of making the assignment if the creditor, at the time of the transfer, was an insider and had reasonable cause to believe the debtor was insolvent at the time of the transfer; and [¶] (5) That enables the creditor to receive more than another creditor of the same class."

Section 547(b) of title 11 of the United States Code, provides: "Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—[¶] (1) to or for the benefit of a creditor; [¶] (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; [¶] (3) made while the debtor was insolvent; [¶] (4) made—[¶] (A) on or within 90 days before the date of the filing of the petition; or [¶] (B) between [90] days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and [¶] (5) that enables such creditor to receive more than such creditor would receive if—[¶] (A) the case were a case under chapter 7 of this title; [¶] (B) the transfer had not been made; and [¶] (C) such creditor received payment of such debt to the extent provided by the provisions of this title."

In *Sherwood*, the court addressed the same issue we are faced with here: whether the Bankruptcy Code preempted section 1800. (*Sherwood, supra,* 394 F.3d at p. 1200.) Similar to the facts in our case, Thinklink transferred $1 million to Lycos. Two months later, Thinklink made a voluntary general assignment for the benefit of creditors to Sherwood. Sherwood sued Lycos to recover the $1 million pursuant to section 1800. After the matter was removed to federal court, the district court rejected Lycos's preemption argument and granted Sherwood's motion for summary judgment. (394 F.3d at p. 1200.)

The *Sherwood* court began by explaining the applicable preemption principles: "Congress has broad authority to preempt state laws, but whether

Congress has done so in a particular instance is a matter of congressional intent. This intent is most easily detected where the statute expressly preempts other laws, but preemption may also be inferred where it is clear from the statute and surrounding circumstances that Congress intended to occupy the field, leaving no room for state regulation. The Supreme Court[] [has] [citation] . . . summarized the contours of the field preemption doctrine: 'Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be found from a " 'scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because 'the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' or because 'the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose.' " ' [Citation.] 'Even where Congress has not entirely displaced state regulation in a specific area,' the Court continued, 'state law is pre-empted . . . where [it] "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ' [Citation.]

"There can be no doubt that federal bankruptcy law is 'pervasive' and involves a federal interest 'so dominant' as to 'preclude enforcement of state laws on the same subject'—much like many other areas of congressional power listed in Article I, Section 8, of the Constitution, such as patents, copyrights, currency, national defense and immigration. The Bankruptcy Clause, which grants Congress the power to make bankruptcy laws, U.S. Const. art. I, § 8, cl. 4, stresses that such rules must be 'uniform.' Bankruptcy law occupies a full title of the United States Code. It provides a comprehensive system of rights, obligations and procedures, as well as a complex administrative machinery that includes a special system of federal courts and United States trustees.

"At the same time, federal law coexists peaceably with, and often expressly incorporates, state laws regulating the rights and obligations of debtors (or their assignees) and creditors. *See, e.g.,* . . . [11 United States Code] section 544(b)[(1)] (making state law on voidable transfers available to the bankruptcy trustee) . . . ." (*Sherwood, supra,* 394 F.3d at pp. 1200–1201.)

The *Sherwood* court first addressed Sherwood's claim the Bankruptcy Code does not preempt section 1800 because it is specifically incorporated by section 544(b)(1) of title 11 of the United States Code, which allows a bankruptcy trustee to avoid any transfers voidable by unsecured creditors under " 'applicable law,' " including state law. (*Sherwood, supra,* 394 F.3d at p. 1201.) The court disagreed with Sherwood because 11 United States Code

section 544(b)(1) limits the trustee's powers to unsecured creditors whereas section 1800 can only be exercised by general assignees. (394 F.3d at p. 1201.) Interpreting the statutory definitions of " 'creditor' " and " 'custodian,' " which includes " 'assignee[s] under a general assignment for the benefit of the debtor's creditors' " the court opined " 'creditor' " does not include "custodians." (*Id.* at p. 1202.)

Next, the *Sherwood* court addressed whether section 1800's assignee's special avoidance powers could "coexist with the federal bankruptcy scheme." (*Sherwood, supra*, 394 F.3d at p. 1202.) The court explained the Bankruptcy Code embodies two separate and somewhat independent ideals: "It is generally agreed that chapter 7 of the Bankruptcy Code, which governs liquidations, embodies two ideals: (1) giving the individual debtor a fresh start, by giving him a discharge of most of his debts; and (2) equitably distributing a debtor's assets among competing creditors." (*Id.* at p. 1203.) The court explained the United States Supreme Court has held state laws that perform the first function, the discharge of debts, are preempted. (*Ibid.*)

As to the second function, the court, without citation to any authority, stated, "What goes for state discharge provisions also holds true for state statutes that implicate the federal bankruptcy law's other major goal, namely equitable distribution." (*Sherwood, supra*, 394 F.3d at p. 1203.) The court explained the federal bankruptcy scheme accomplishes equitable distribution through a collective proceeding created to prevent a "feeding frenzy" and " 'bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike.' " (*Id.* at pp. 1203–1204.)

The court relied on several factors as a basis for its decision the Bankruptcy Code preempted state laws that implicate equitable distribution. First, sections 547(b)[3] and 544(b)(1)[4] of title 11 of the United States Code give the trustee "the power to avoid preferential transfers" and recover the sums to distribute to creditors. (*Sherwood, supra*, 394 F.3d at p. 1204, fn. omitted.)

---

[3] Title 11 United States Code section 547(b) states: "Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—[¶] (1) to or for the benefit of a creditor; [¶] (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; [¶] (3) made while the debtor was insolvent; [¶] (4) made—[¶] (A) on or within 90 days before the date of the filing of the petition; or [¶] (B) between [90] days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and [¶] (5) that enables such creditor to receive more than such creditor would receive if—[¶] (A) the case were a case under chapter 7 of this title; [¶] (B) the transfer had not been made; and [¶] (C) such creditor received payment of such debt to the extent provided by the provisions of this title."

[4] Title 11 United States Code section 544(b)(1) provides: "[T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . ."

And there are safeguards in place to ensure the trustee is performing appropriately: The trustee is subject to the jurisdiction of the federal courts, the United States trustee appoints and supervises the trustee or is elected by the creditors, unlike the "assignee" who is handpicked by the debtor, and federal law protects creditors through conflict of interest laws. (*Ibid.*)

Second, if a state assignee recovers a preferential transfer pursuant to section 1800 and distributes it, a federal trustee cannot recover "the same sum under the federal preference statute if a federal bankruptcy proceeding is [filed]." (*Sherwood, supra,* 394 F.3d at p. 1204.) "The distribution of the recovered sum will then have been made by a state assignee subject to state procedures and substantive standards, rather than by the federal trustee subject to bankruptcy law's substantive standards and procedural protections." (*Ibid.,* fn. omitted.)

Last, once state court proceedings begin, "they will affect the incentives of various parties as to whether they wish to avail themselves of federal bankruptcy law. The creditor whose ox is being gored by the state assignee may have a new incentive to begin an involuntary federal proceeding; other creditors . . . may have diminished incentives" because they may share in sums recovered by the assignee and "might therefore have no interest in invoking the potentially more expensive and time-consuming federal processes." (*Sherwood, supra,* 394 F.3d at p. 1205.) The court concluded, "We believe that statutes that give state assignees or trustees avoidance powers beyond those that may be exercised by individual creditors trench too close upon the exercise of the federal bankruptcy power. . . . The exercise of the preference avoidance power by Sherwood under the authority of [S]ection 1800 is inconsistent with the enactment and operation of the federal bankruptcy system and is therefore preempted." (*Id.* at pp. 1205–1206.)

CMAC argues the trial court erred in relying on *Sherwood* to conclude the Bankruptcy Code preempted section 1800. CMAC contends this court is not bound by *Sherwood,* there is a strong presumption against preemption, the United States Supreme Court has approved state statutes similar to section 1800, and the *Haberbush* court's analysis of the issue is more persuasive.

Countrywide contends that although we are not bound by *Sherwood,* we should afford it great weight because it is a federal court's interpretation of federal law. Countrywide asserts the Bankruptcy Code, specifically 11 United States Code section 547, preempts section 1800 because section 547 granted to "trustees in bankruptcy" the ability to recover "preference payments." Therefore, Countrywide claims, Congress has " 'occupied the field' of bankruptcy law," or alternatively, section 1800 " ' "stands as an obstacle" ' " to section 547 because section 1800 grants to "assignees" the power to recover preference payments.

■ At the outset, we note we are mindful that lower federal court decisions on federal questions are persuasive authority, but they are not binding on this court. (*Walker v. Kiousis* (2001) 93 Cal.App.4th 1432, 1441 [114 Cal.Rptr.2d 69].) As we explain below, we find the *Haberbush* court's analysis of the issue more persuasive and conclude section 547 does not preempt section 1800 because Congress did not " 'occup[y] the field' " when it enacted section 547 and section 1800 does not " ' "stand[] as an obstacle" ' " to section 547.

In *Haberbush*, the court faced the same issue the *Sherwood* court faced, and the same issue we are faced with here—does the Bankruptcy Code preempt section 1800? (*Haberbush, supra*, 139 Cal.App.4th at p. 1633.) Again, similar to the facts in our case, "Carolyn's Country Pies, Inc. . . . executed a voluntary general assignment for the benefit of creditors" to Haberbush. (*Ibid.*) Haberbush sued three defendants to recover certain payments as preferential transfers pursuant to section 1800. (139 Cal.App.4th at p. 1634.)

After reciting the *Sherwood* court's summary of the applicable preemption principles as correct, the *Haberbush* court disagreed with the *Sherwood* court's analysis of the issue because the court found "it impossible to conclude . . . section 1800 is inconsistent with 'the essential goals and purposes of federal bankruptcy law . . . .' [Citation.]" (*Haberbush, supra*, 139 Cal.App.4th at p. 1637.)

The *Haberbush* court articulated five reasons for its conclusion the Bankruptcy Code does not preempt section 1800 and the *Sherwood* court got it wrong.

■ "First, it is undisputed that Congress intended, in general, to permit the coexistence of state laws governing voluntary assignments for the benefit of creditors. As *Sherwood* . . . necessarily concedes, voluntary assignments for the benefit of creditors have 'a venerable common-law pedigree' [citation] and were expressly upheld [by the United States Supreme Court] . . . . [(See *Pobreslo v. Boyd Co.* (1933) 287 U.S. 518, 526 [77 L.Ed. 469, 52 S.Ct. 262] (*Pobreslo*) [state law regulating voluntary assignments serving to protect creditors against each other and assuring equality of distribution in harmony with federal act]; *Stellwagen v. Clum* (1918) 245 U.S. 605, 615 [62 L.Ed. 507, 38 S.Ct. 215] (*Stellwagen*) [state law permitting appointment of a receiver to take charge of all assets of the debtor and administer them for the equal benefit of all creditors not opposed to bankruptcy law policy, rules or principles].)] Indeed, the Bankruptcy Code expressly makes state law on voidable transfers available to the bankruptcy trustee. (11 U.S.C. § 544(b)[(1)].)" (*Haberbush, supra*, 139 Cal.App.4th at p. 1637, fn. omitted.)

■ "Second, *Sherwood* . . . reaches too far in suggesting that any state statute that 'implicate[s]' the federal bankruptcy law's second major goal of equitable distribution is preempted. [Citation.] The statutes upheld against preemption challenges in *Pobreslo* and *Stellwagen* obviously implicate the federal bankruptcy law's goal of equitable distribution. Indeed, *Pobreslo* and *Stellwagen* expressly refer to that goal in upholding the state statutes. (*Pobreslo, supra,* 287 U.S. at p. 526 [state law assures 'equality of distribution']; *Stellwagen, supra,* 245 U.S. at p. 615 [state law 'is not opposed to the policy of the bankruptcy law . . . with a view to the fair distribution of the assets of the insolvent'].) In short, the mere fact that a state law 'implicate[s]' the Bankruptcy Code's goal of equitable distribution is not sufficient to justify the conclusion that the state law 'stands as an obstacle' to that goal. [Citation.]" (*Haberbush, supra,* 139 Cal.App.4th at pp. 1637–1638, fn. omitted.)

■ "Third, the *Sherwood* [court's] conclusion . . . section 1800 is preempted rests, in essence, on . . . two points: (1) the fact that section 1800 gives the assignee powers beyond those that may be exercised by individual unsecured creditors; and (2) the proposition that the assignee's powers to avoid preferential transfers will 'affect the incentives of various parties as to whether they wish to avail themselves of federal bankruptcy law[,]' thereby interfering with the code's goal of equitable distribution of a debtor's assets. [Citation.] However: [¶]—As Judge Nelson points out in her dissent, '[s]tate voluntary assignments, by definition, give the assignee more power than may be exercised by an individual creditor.' [Citation.] The majority's reliance on this distinction thus would cast doubt on the validity of all voluntary assignment statutes, not merely those allowing the assignee to avoid preferential transfers. Yet[,] Supreme Court precedents clearly reject the notion that voluntary assignments generally are incompatible with federal bankruptcy law. [Citations.] [¶]—As for the alteration of incentives to use federal bankruptcy law, we do not doubt that incentives may be affected by the existence of an alternative to formal bankruptcy proceedings—particularly an alternative that may be less 'expensive and time-consuming . . . .' [Citation.] Again, however, incentives to use bankruptcy law may be affected by any voluntary assignment laws, whether or not the assignee has the power to avoid preferential transfers. The only pertinent question is whether the state statute's effect on those incentives somehow interferes with or is an obstacle to the Bankruptcy Code's objective of equitable distribution. In our view, the *Sherwood* . . . majority provides no cogent explanation of how the assignee's avoidance powers conflict with that objective. As Judge Nelson correctly observed, because the common law right to make an assignment of property for the benefit of creditors is well established, it is 'illogical that state laws that provide a forum for the equitable distribution of that property should be

preempted by federal bankruptcy law.' [Citation.]" (*Haberbush, supra,* 139 Cal.App.4th at pp. 1638–1639, fns. omitted.)

■ "Fourth, the *Sherwood* . . . majority correctly points out that if a preferential transfer is recovered by the assignee, the same sum could not be recovered if a federal bankruptcy proceeding were filed. However, as Judge Nelson observes: 'But California's preference recovery provision is, by design, virtually identical to the [B]ankruptcy [C]ode's preferential transfer statute. [Citations.] If the same transfer can be avoided in both the state and federal systems, how does the state system interfere with bankruptcy's goal of equitable distribution? Both the state and federal statutes serve to ensure equality of distribution and to deter the race to recover assets before insolvency. [Citations.] That California's voluntary assignment system has such a provision makes it more capable of effectuating the equality of distribution that is the aim of the bankruptcy law; it does not necessarily interfere with bankruptcy's goal of achieving equal distribution.' [Citation.]" (*Haberbush, supra,* 139 Cal.App.4th at pp. 1639–1640, fn. omitted.)

■ "Finally, as Judge Nelson also pointed out, federal regulation should not be deemed preemptive of state regulatory power absent ' "persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." ' [Citation.] This is not such a case. ■ Voluntary assignments and the bankruptcy system have coexisted since the inception of bankruptcy law, and state laws regulating the rights and obligations of debtors or their assignees and creditors are often expressly incorporated in bankruptcy law. [Citation.] Congress has not indicated that voluntary assignments generally or preferential transfer avoidance laws specifically are to be preempted. [Citation.] Under these circumstances, we can discern no persuasive reason to conclude that California's 'less stigmatic, and less costly, voluntary assignment scheme' [citation]—which, like the federal bankruptcy system, serves to ensure equality of distribution of a debtor's assets—'stands as an obstacle to the accomplishment . . . of the full purposes and objectives' of the federal bankruptcy system. [Citation.]" (*Haberbush, supra,* 139 Cal.App.4th at p. 1640.)

■ Based on our independent reading of section 1800 and 11 United States Code section 547, and their goals and underlying policies, and United States Supreme Court precedent, we conclude the *Haberbush* court's reasoning Congress did not intend to " 'occup[y] the field' " when it enacted section 547, and section 1800 does not " 'stand[] as an obstacle' " to section 547 is persuasive. The Bankruptcy Code, specifically section 547(b), does not preempt section 1800.

## DISPOSITION

The judgment is reversed. Credit Managers Association of California shall recover its costs on appeal.

Bedsworth, Acting P. J., and Ikola, J., concurred.

Respondent's petition for review by the Supreme Court was denied January 24, 2007, S148010. Moreno, J., did not participate therein.